Larry **CHEROSKY**; Thomas Jennings; Anthony Clemons; Vincent Faini, Plaintiffs–Appellants,

v.

William J. **HENDERSON**, Postmaster General in his official capacity, Defendant–Appellee.

No. 01–35254.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 2003.

Filed June 5, 2003.

David A. Bahr, David Bahr & Associates, P.C., Eugene, OR, for appellants.

Michael W. Mosman, United States Attorney, James L. Sutherland, Assistant United States Attorney, Eugene, Oregon; Eric J. Scharf, Stephan J. Boardman, United States Postal Service, Washington, DC., for appellee.

* The Honorable Norma L. Shapiro, Senior United States District Court Judge for Eastern District of Pennsylvania, sitting by designation.

Before KLEINFELD and McKEOWN, Circuit Judges, and SHAPIRO,* District Judge.

## OPINION

McKEOWN, Circuit Judge.

Last year, in *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court substantially limited the continuing violations doctrine in the context of employment discrimination actions. The Court held that Title VII "precludes recovery for discrete acts of discrimination that occur outside the statutory time period" for filing claims. *Id.* at 117, 122 S.Ct. 2061. In this case, we consider the impact of *Morgan* on employment decisions that occurred outside of the limitations period, but were made pursuant to an allegedly discriminatory policy that remained in effect during the limitations period. We conclude that *Morgan* precludes recovery under these circumstances.

### FACTUAL BACKGROUND

The four plaintiffs in this action, Larry Cherosky, Thomas Jennings, Anthony Clemons, and Vincent Faini (the "Employees"), are or were employees of the United States Postal Service at the Gateway facility in Eugene, Oregon. The Employees claim that they began having respiratory problems after the introduction of high speed mail sorting machines into the workplace. In October 1994, each of the Employees requested permission to use a negative flow or full face respirator at work.

The Postal Service denied the Employees' requests pursuant to its policy of prohibiting respirators except where air contaminants exceed the limits set forth in the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 ("OSHA"), and its regulations.[1] Although the parties dis-

1. No one disputes that the air quality at the Gateway facility was within OSHA's recommended threshold limit.

pute whether the policy is a flexible one which can take into account an employee's particular medical needs, the policy, in the Postal Service's own words, is as follows: "Basically we have determined that [the] policy concerning the use of respirators by Postal employees is defined by the type of atmosphere [to which] employees may be exposed while performing their duties.... Employees may not wear respirators when the working conditions do not reflect either a violation of a standard or a recommended threshold limit."

This policy is based on OSHA's regulations addressing "respiratory protection." 29 C.F.R. § 1910.134. The regulations provide that "occupational diseases caused by breathing air contaminated with harmful dusts, fogs, fumes, mists ... or vapors" should be controlled, to the extent possible, "by prevent[ing] atmospheric contamination." *Id.* at § 1910.134(a)(1). Where effective atmospheric controls "are not feasible, or while they are being instituted, appropriate respirators shall be used." *Id.* Where the air quality in a facility meets OSHA standards and respirator use is not necessary, however, an employer may allow employees to wear respirators only "if the employer determines that such respirator use will not in itself create a hazard." *Id.* at § 1910.134(c)(2)(i).

In 1994 and again in 1997, the Employees' union filed a grievance based on the denial of the respirator requests. Not satisfied with the Union's progress, the Employees each contacted the Equal Employment Opportunity Commission ("EEOC") in August of 1997 and filed complaints in September and October of 1997. More than a year later, in 1998, the Employees filed suit in the district court and alleged

that the Postal Service's denial of their requests to wear respirators violated the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.*

The district court granted summary judgment in favor of the Postal Service on the ground that the Employees' claims were time barred under 29 C.F.R. § 1614.105(a)(1), which requires a timely consultation before filing suit.[2]

## DISCUSSION

■ In order to bring a claim under the Rehabilitation Act, a federal employee must exhaust available administrative remedies. Federal regulations require that "[a]ggrieved persons who believe they have been discriminated against on the basis of ... handicap must consult [an EEOC ] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). This consultation must occur "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Id.* at § 1614.105(a)(1). Failure to comply with this regulation is "fatal to a federal employee's discrimination claim." *Lyons v. England,* 307 F.3d 1092, 1105 (9th Cir. 2002). Thus, the primary issue in this appeal is whether the claims were properly exhausted through a timely consultation.

Here, the Employees did not initiate contact with an EEOC officer within 45 days of the denial of their requests to wear respirators. Nor can the Employees point to any discrete, discriminatory act that occurred within the 45–day period. The Employees candidly acknowledge that

---

**2.** The district court also struck the Employees' claim for punitive damages. Although the Employees appeal this ruling, we need not address the issue in light of our holding with respect to the limitations period.

their claims are based on conduct that occurred outside of the 45–day period prescribed in § 1614.105(a)(1).

Nonetheless, the Employees argue that their claims are timely under the continuing violations doctrine. They reason that the timeliness of their claims cannot be determined based on the denial date of the accommodation demand because the Postal Service denied their requests pursuant to an ongoing discriminatory policy.

In evaluating the Employees' argument, we are guided by *Morgan.*[3] Before *Morgan*, the "lower courts [had] offered reasonable, albeit divergent solutions" to the question of whether conduct "fall[ing] outside the statutory time period for filing charges" was actionable. *Morgan*, 536 U.S. at 119, 122 S.Ct. 2061. Prior to *Morgan*, a plaintiff arguably could invoke the continuing violations doctrine by demonstrating "either [a ] series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." HENRY H. PERRITT, JR., CIVIL RIGHTS IN THE WORKPLACE, § 7.04[E] (3d ed.2001) (internal quotation marks and citations omitted).

In *Morgan*, however, the Supreme Court substantially limited the notion of continuing violations: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 122, 122 S.Ct. 2061. In specifically rejecting the application of the continuing violations doctrine to what the Employees

now characterize as a "serial violation," the Court explained that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."[4] *Id.* In contrast to discrete acts, the Court carved out an exception for claims based on a hostile work environment. Noting that by their very nature hostile environment claims involve repeated conduct, the Court held that claims based on a hostile environment "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 127, 122 S.Ct. 2061.

■ *Morgan* makes clear that claims based on discrete acts are only timely where such acts occurred within the limitations period, and that claims based on a hostile environment are only timely where at least one act occurred during the limitations period. Acknowledging that their claims would be untimely under either of these tests because no discriminatory act occurred within the limitations period, the Employees attempt to cast their allegations as a pattern-or-practice claim, noting that the Supreme Court expressly reserved the question of timely filing as applied to such claims. *Id.* at 123 n. 9, 122 S.Ct. 2061 ("We have no occasion here to consider the timely filing question with respect to 'pattern-or-practice claims'. . . .").

■ At the outset, we doubt whether the Postal Service's conduct is properly analyzed under the "pattern-or-practice" rubric. Although the terms "pattern-or-

---

3. Although *Morgan* involved Title VII of the Civil Rights Act of 1964, the Supreme Court's analysis of the continuing violations doctrine is not limited to Title VII actions. It applies with equal force to the Rehabilitation Act and to actions arising under other civil rights laws. *See, e.g., RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir.2002) (applying *Morgan* in suit arising under 42 U.S.C. § 1983); *Kaster v. Safeco Ins. Co. of Am.*, 212

F.Supp.2d 1264 (D.Kan.2002) (applying *Morgan* to the Age Discrimination in Employment Act).

4. To illustrate the meaning of the term "discrete discriminatory act," the Court identified the following examples: "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 122, 122 S.Ct. 2061.

practice" are not defined by statute, we have held that these terms have their ordinary meaning. *See United States v. Ironworkers Local 86,* 443 F.2d 544, 552 (9th Cir.1971) ("The words were not intended to be words of art," internal citations omitted). As the Supreme Court explained, pattern-or-practice claims cannot be based on "sporadic discriminatory acts" but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace. *See Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

Here, the Employees have not attempted to show, by argument let alone with statistical or any other evidence, that the Postal Service widely discriminates against employees with disabilities or even that it routinely discriminates with respect to respirator requests. *See Lyons,* 307 F.3d at 1107 n. 8 (explaining that plaintiffs bringing pattern-or-practice claims typically use statistical evidence to demonstrate the employer's past treatment of the protected group). Nor do the Employees assert that it is discriminatory for the Postal Service to prohibit the use of respirators as a general rule. Rather, they each challenge the Postal Service's individualized decision to deny their accommodation requests by asserting that they should be granted an exception from the no-respirator rule because of their particular respiratory needs. As the district court aptly noted, the "heart of plaintiffs' complaint does not stem from the policy regarding the use of respirators, but rather from the individualized decisions that resulted from implementation of a policy originating from OSHA." These individualized decisions are best characterized as discrete acts, rather than as a pattern or practice of discrimination.

■ The allegation that these discrete acts were undertaken pursuant to a discriminatory policy does not extend the statutory limitations period set forth in 29 C.F.R. § 1614.105(a)(1). Rather, as we concluded in *Lyons,* "[plaintiff's] assertion that this series of discrete acts flows from a company-wide, or systematic, discriminatory practice will not succeed in establishing the employer's liability for acts occurring outside the limitations period because the Supreme Court has determined that each incident of discrimination constitutes a separate actionable unlawful employment practice." *Lyons,* 307 F.3d at 1107. Thus, "[a] discriminatory practice, though it may extend over time and involve a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of each of which must be brought within the statutory limitations period." *Id.* at 1108.

Our conclusion that a discriminatory policy claim does not extend the statute of limitations finds support in *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), in which the Supreme Court considered a pattern-or-practice challenge to a discriminatory salary structure. The Court noted that the plaintiffs' salary discrimination claim did not accrue based on the existence of the policy or based on when the policy took effect. Instead, "[e]ach week's paycheck that deliver[ed ] less to a black than to a similarly situated white is a wrong actionable under Title VII." *Id.* at 395, 106 S.Ct. 3000. Just as the wrong in *Bazemore* accrued each time the salary policy was implemented, the alleged wrong here occurred and accrued when the policy was invoked to deny an individual employee's request.

We also draw support from a persuasive opinion from the Second Circuit, the only other circuit to have considered the question of whether an employer's rejection of a proposed accommodation can be a continuing violation. *See Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130 (2d Cir. 2003). The case involved a Muslim truck

driver who sought an adjustment to his work schedule for religious reasons. His employer denied his request for time off during the work day, suggesting instead that Elmenayer bid on evening work assignments so that he would be free to attend religious services during the day. *Id.* at 132 Elmenayer sued, alleging that his employer unreasonably refused to accommodate his religious practices as required by Title VII. *Id.* at 133.

It was undisputed that Elmenayer failed to file a charge with the EEOC within the statutory period. Elmenayer asserted, as the Employees do here, that his claims should be considered timely nonetheless because his requests were denied pursuant to a discriminatory policy and that the timeliness should "be measured from the latest date when [he] was still prevented from observing his religious requirements in the way he had proposed." *Id.* at 134. Relying on *Morgan* and *Bazemore,* the Second Circuit rejected this argument:

> These rulings persuade us that an employer's rejection of an employee's proposed accommodation ... does not give rise to a continuing violation. Rather, the rejection is the sort of "discrete act" that must be the subject of a complaint to the EEOC within [the statutory period.] ... Although the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that *Morgan* offered as examples of a discrete act.

*Id.* at 134–35. Explaining that the "clear message of *Bazemore* is that an employer performs a separate employment practice each time it takes adverse action against an employee," the Second Circuit held that an employee must challenge an adverse action within the limitations period, "even if that action is simply a periodic imple-

mentation of an adverse decision previously made." *Id.* at 134. The same reasoning applies here.

Finally, we note that it would eviscerate *Morgan's* premise to circumvent the timely filing requirements merely because a plaintiff alleges that the acts were taken pursuant to a discriminatory policy. As the Fifth Circuit observed, "[i]f the mere existence of a policy is sufficient to constitute a continuing violation, it is difficult to conceive of a circumstance in which a plaintiff's claim of an unlawful employment policy could be untimely." *Abrams v. Baylor Coll. of Med.,* 805 F.2d 528, 533 (5th Cir. 1986). The Supreme Court has made clear, however, that the application of the continuing violations doctrine should be the exception, rather than the rule. We are not free to depart from this directive.

### CONCLUSION

We conclude that the Employees cannot challenge conduct that occurred prior to the limitations period merely by alleging that the conduct was undertaken pursuant to a policy that was still in effect during the limitations period. Each of the Postal Service's denials of the Employees' requests for respirators constitutes a discrete act of alleged discrimination. The Employees' claims are time-barred because they did not initiate contact with a counselor within 45 days of the denial. The Employees are not without a remedy, however, and, curiously, this entire appeal might well have been avoided had the Employees timely invoked the consultation process after a subsequent denial. As the Postal Service acknowledged at oral argument, if a new request results in a denial, the time period begins to run anew.

**AFFIRMED.**