Kurian DAVID, et al., Plaintiffs

v.

SIGNAL INTERNATIONAL, LLC, et al., Defendants

Related Cases:

Equal Employment Opportunity Commission, Plaintiff

v.

Signal International, LLC, et al., Defendants

Lakshmanan Ponnayan Achari, et al., Plaintiffs

v.

Signal International, LLC, et al., Defendants.

Applies to: EEOC v. Signal (12-557)

Civil Action Nos. 08–1220, 12–557, 13–6218, 13–6219, 13–6220, 13–6221.

United States District Court, E.D. Louisiana.

Signed Dec. 4, 2013.

**36.** Rec. Doc. No. 30.

Julie Steptoe Bean, Gerald L. Miller, Steven Lee Murray, Marsha Lynn Rucker,

U.S. Equal Employment Opportunity Commission, Birmingham, AL, Anica C. Jones, U.S. Equal Employment Opportunity Commission, Nashville, TN, for Equal Employment Opportunity Commission.

Erin Casey Hangartner, Alan Dean Weinberger, Elham Rabbani, Hal D. Ungar, Hangartner, Rydberg, Terrell & Hart, LLC, New Orleans, LA, Patricia Anne F. Bollman, Patricia A. Bollman, APLC, New Orleans, LA, Dominic Joseph Gianna, Aaron & Gianna, PLC, New Orleans, LA, for Signal International, LLC.

Alan Bruce Howard, Hugh Daniel Sandler, Crowell & Moring, LLP, New York, NY, Chandra S. Bhatnagar, American Civil Liberties Union Foundation, New York, NY, Ivy O. Suriyopas, Asian American Legal Defense and Educational Fund, New York, NY, Thomas P. Fritzsche, Naomi Tsu, Daniel Werner, Southern Poverty Law Center, Atlanta, GA, Joseph Bjarnson, Sahn Ward Coschignano & Baker, PLLC, Uniondale, NY, Eden B. Heilman, Meredith B. Stewart, Southern Poverty Law Center, New Orleans, LA, Intervenor Plaintiffs.

## ORDER AND REASONS

SUSIE MORGAN, District Judge.

Before the Court is a Motion for Entry of Discovery Plan and Case Management Order filed by plaintiff, the Equal Employment Opportunity Commission (the "EEOC").[1] Defendant Signal International, LLC ("Signal") opposes the EEOC's motion.[2] Plaintiffs–Intervenors filed a response in support of the EEOC's Proposed Discovery Plan and Case Management Order.[3]

Also before the Court is the parties' oral request for clarification of the Order and Reasons entered on August 19, 2013[4] in response to the EEOC's Motion to Bifurcate Trial and Discovery.[5]

## BACKGROUND

On April 20, 2011, the EEOC brought suit against Signal under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), for discriminating against approximately 500 Indian national employees who worked and lived in Pascagoula, Mississippi and Orange, Texas. The EEOC's claims are brought pursuant its authority under §§ 706 and 707 of Title VII on behalf of a class of Indian employees.[6] The EEOC alleges Signal 1) created a hostile work environment for the Indian employees (in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e–2(a)); 2) discriminated against and subjected the Indian employees to disparate terms and conditions of employment based upon their race and national origin (in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e–2(a)); 3) unlawfully retaliated against two employees[7] (in violation of § 704(a) of Title VII, 42 U.S.C. § 2000e–3(a)); and 4) engaged in a pattern

---

1. R. Doc. 231.

2. Signal filed its first opposition on September 10, 2013 (Doc. 240), but was granted leave to file an additional opposition. Signal's more comprehensive opposition was filed on September 17, 2013 (Doc. 242).

3. R. Doc. 239.

4. R. Doc. 228.

5. R. Doc. 141.

6. Although the EEOC brought suit on behalf of a class, the term "class" or "class members" is used to collectively describe the aggrieved individuals who the EEOC represents and does not implicate Federal Rule of Civil Procedure 23.

7. Sabulal Vijayan and Joseph Jacob Kadakkarappally's retaliation claims stem from certain events occurring on March 9, 2007.

or practice of subjecting the employees to a hostile work environment and disparate terms and conditions of employment based on their race and national origin.[8]

On February 3, 2012, the plaintiffs-intervenors filed a class complaint in intervention against Signal.[9] The intervenors alleged the same claims as the EEOC for 1) hostile work environment; 2) discrimination and 3) retaliation, but did not allege a pattern or practice claim.[10] On November 7, 2012, the plaintiffs-intervenors amended their complaint to add nine more intervenors.[11]

The EEOC moved to bifurcate the case for trial and discovery on July 20, 2012.[12] The plaintiffs-intervenors filed a memorandum in support of the EEOC's motion.[13] Signal opposed the EEOC's motion.[14] Although Signal agreed bifurcation was ordinarily appropriate for pattern and practice claims, it disagreed with the manner in which the EEOC proposed to bifurcate the case.

The Court granted the EEOC's Motion to bifurcate in part.[15] The Court ordered liability and injunctive relief under the EEOC's pattern and practice claim for disparate treatment to be litigated in Phase I under the framework the United States Supreme Court delineated in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).[16] The Court directed all remaining claims asserted by the EEOC and the plaintiffs-intervenors to be tried in Phase II, including Signal's liability for punitive damages.[17] Because the pleadings revealed that the EEOC and Signal disagreed over the burdens of proof, recoverable damages, and the interpretation of § 706 and § 707 of Title VII, the Court further ordered the parties to submit proposed case management orders to identify the exact claims to be tried in each phase, the statutory basis for each claim, the burden of proof to be applied to each claim, and whether or not a pattern or practice finding in Phase I would have any effect in Phase II.[18] The parties submitted their proposed case management orders and they are now before the Court.

A status conference was held on November 8, 2013 at which the parties discussed their proposed discovery plans and case management orders.[19] The parties orally requested clarification of the Court's prior

---

**8.** Although the EEOC originally filed suit on April 20, 2011 (Doc. 1), the EEOC was granted leave to file an amended complaint to change a citation to an incorrect statute on August 8, 2012 (Doc. 153).

**9.** R. Doc. 45. The intervenors' motion to intervene was granted on January 24, 2012 (Doc. 44) while the case was pending in the Southern District of Mississippi. The plaintiffs-intervenors were originally comprised of three individual Indian employees.

**10.** R. Doc. 45.

**11.** R. Doc. 179. Although the intervenors originally alleged a class complaint, they did not move for class certification within 91 days as required by Local Rule 23.1(B), thereby waiving their right for class certification.

The plaintiffs-intervenors' amended complaint did not allege class claims but only claims on behalf of the twelve named employees.

**12.** R. Doc. 141.

**13.** R. Doc. 149.

**14.** R. Doc. 150.

**15.** R. Doc. 228.

**16.** R. Doc. 228, p. 3.

**17.** R. Doc. 228, p. 4.

**18.** R. Doc. 228, p. 6.

**19.** R. Doc. 300.

order[20] specifically with respect to whether the EEOC could bring its Phase I pattern or practice claim under §§ 706 and 707, whether or not Phase I would be tried by a jury, what remedies would be available for the EEOC's pattern or practice claim in Phase I, and what, if any, effect a Phase I finding of a pattern or practice of discrimination would have in Phase II. The parties were afforded an additional opportunity to express their concerns by submitting letters to the Court.[21]

## LAW AND ANALYSIS

After considering the issues raised in the parties' proposed discovery plans and case management orders, the Court grants the EEOC's Motion for Entry of Discovery Plan and Case Management Order. The Court will enter a separate case management order for Phase I.[22]

The Court also grants the parties' oral request for clarification of its August 19, 2013 Order[23] and Reasons bifurcating the case, as set forth below.

### I. Phase I

#### (A) EEOC's §§ 706 and 707 Pattern or Practice Claims

The parties disagree as to whether the EEOC may bring its pattern or practice claim for disparate treatment under both §§ 706 and 707 of Title VII, and, if so, whether both claims may be tried in Phase I.

■ The EEOC alleges pattern or practice claims in its complaint under §§ 706 and 707 and argues it may proceed under the *Teamsters* framework for both.[24] All parties agree that pattern and practice claims generally proceed under the framework delineated in *Teamsters*. The *Teamsters* model begins with a "liability" stage, where "the EEOC must first establish a prima facie case of pattern or practice by 'demonstrat[ing] that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers.' " *EEOC v. JBS USA, LLC*, 2011 WL 3471080, 2011 U.S. Dist. LEXIS 87127 (D.Colo. Aug. 8, 2011) (quoting *Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843). The burden then shifts to the employer to rebut the prima facie showing of pattern or practice by showing the EEOC's proof is "inaccurate or insignificant." *Teamsters*, 431 U.S. at 360, 97 S.Ct. 1843.

Signal contends the EEOC cannot pursue a pattern or practice claim under § 706 using the *Teamsters* model because only claims under § 707 may proceed using *Teamsters*. Signal relies upon the decision in *EEOC v. Bass Pro Outdoor World, LLC*, where the Southern District of Texas outlined the treatment of pattern or practice claims under §§ 706 and 707 among district courts:

"Notwithstanding [the differences between § 706 and § 707], courts have blurred the line between class-wide claims brought pursuant to § 706 and pattern-or-practice claims brought pursuant to § 707." *EEOC v. Scolari*

---

20. R. Doc. 228.

21. R. Doc. 300. Both the EEOC and Signal submitted letters with respect to whether or not Phase I would be tried by a jury. *See* Doc. 302, Doc. 303. Signal also submitted a letter regarding whether or not the EEOC could bring a pattern or practice claim under § 706. *See* Doc. 301.

22. R. Doc. 317.

23. R. Doc. 228.

24. R. Doc. 231. The EEOC's Proposed Discovery Plan and Case Management Order.

*Warehouse Mkts., Inc.,* 488 F.Supp.2d 1117, 1143 (D.Nev.2007) (citing *General Telephone v. EEOC,* 446 U.S. 318, 328 n. 12, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); *EEOC v. Gen. Tel. Co. of the Northwest, Inc.,* 885 F.2d 575, 577 (9th Cir.1989); *EEOC v. Foster Wheeler Constructors, Inc.,* No. 98 C 1601, 1999 U.S. Dist. LEXIS 11226, 1999 WL 528200, at *1 (N.D.Ill.1999). Some courts have determined that "the EEOC may bring suit alleging a pattern or practice of unlawful discrimination under section 706 or section 707, but if the suit arises from a charge filed pursuant to section 706, then the EEOC must meet the prerequisites of section 706 before filing suit." *EEOC v. Int'l Profit Associates, Inc.,* No. 01 C 4427, 2007 U.S. Dist. LEXIS 19070, 2007 WL 844555, at *9 (N.D.Ill. March 16, 2007). For example, in *Scolari,* the District Court of Nevada determined that pattern-or-practice claims could be brought pursuant to § 706, even though doing so, "when Congress specifically created another avenue to bring such claims[,] creates an apparent redundancy in the law that troubles the Court." *Scolari Warehouse Mkts., Inc.,* 488 F.Supp.2d at 1144. The court based its decision on several factors. First, the court observed that there were several intersections between § 706 and § 707, including the fact that § 707(e) incorporates the procedural requirements of § 706. *Id.* Second, as the court noted, Title VII has long been construed liberally in favor of complainants. *Id.* at 1145. The court expressed concern that "allowing punitive and compensatory damages for class-wide claims and not for pattern-or-practice claims, when both are equally severe in magnitude, would disrupt Title VII's purpose to eradicate widespread discrimination and to make persons whole again." *Id.* (citing *Albemarle Pa-*

*per Co. v. Moody,* 422 U.S. 405, 417–18, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). Third, the court found that § 706 and § 707 claims are similar in that "the interest in bringing a class action and/or a pattern-or-practice claim is the same: to prevent against unlawful employment practices affecting a group of individuals with related claims." *Id.* (citing *Harriss v. Pan Am. World Airways, Inc.,* 74 F.R.D. 24, 41–42 (N.D.Cal.1977); *Cherosky v. Henderson,* 330 F.3d 1243, 1247 (9th Cir.2003)). The court concluded that "[g]iven the similar nature of such claims and the remedial purpose of Title VII," there was "little legal or prudential reason to foreclose the EEOC from bringing a pattern-or-practice claim pursuant to §§ 706 and 707 for the purpose of seeking punitive and compensatory damages." *Id.*

Other courts have reached the contrary conclusion. Disagreeing with Scolari, the District Court for the Eastern District of Michigan insisted "that allowing punitive and compensatory damages in § 706, but not § 707, actions may 'disrupt Title VII's purpose' is ... irrelevant—Congress apparently did not think so, as the 1992 amendments to 42 U.S.C. § 1981a *only extended punitive and compensatory damages to § 706 actions, not § 707 actions.*" *Serrano v. Cintas Corp.,* 711 F.Supp.2d 782, 793 (E.D.Mich.2010) (emphasis in original). That court went on to find that the EEOC could not proceed solely under § 706, but reserved its "judgment on the propriety of allowing the EEOC to 'blur the lines' ... between the two statutory sections" in cases where the EEOC pursued both § 706 and § 707 actions simultaneously. *Id.* at 794. Similarly, the Northern District of Iowa opined that, "[l]ike § 706, § 707 grants the EEOC the right to seek equitable relief

against employers found to have intentionally engaged in a pattern or practice of unlawful employment discrimination." *EEOC v. CRST Van Expedited, Inc.,* 611 F.Supp.2d 918, 930 (N.D.Iowa 2009) (citing 42 U.S.C. § 2000e–6(a)). "Unlike § 706, however, the EEOC is not authorized to seek compensatory or punitive damages under § 707; the relevant portion of 42 U.S.C. § 1981a only authorized recovery of compensatory and punitive damages '[i]n an action brought by a complaining party under [§ 706].' " *Id.* (citing 42 U.S.C. § 1981a(a)). The *CRST Van Expedited* court accused the EEOC of "attempting to have its cake and eat it too" by trying "to avail itself of the Teamsters burden-shifting framework yet still seek compensatory and punitive damages under § 706." *Id.* at 934. "Complicating matters further," that court observed, "it is important to remember that the Supreme Court designed the *Teamsters* burden-shifting framework with only equitable relief in mind." *Id.* (citing *Jenson v. Eveleth Taconite Co.,* 130 F.3d 1287, 1290 n. 4 (8th Cir.1997)).

*EEOC v. Bass Pro Outdoor World, LLC,* 884 F.Supp.2d 499, 519–20 (S.D.Tex.2012).

After considering the different approaches, the trial court in *EEOC v. Bass Pro Outdoor World, LLC* held the EEOC could not bring a pattern or practice claim under § 706. *Id.* at 520. However, the decision by the District Court for the Eastern District of Michigan in *Serrano v. Cintas,* relied upon by the trial court in *Bass Pro,* was later overturned by the Sixth Circuit. *See Serrano v. Cintas Corp.,* 699 F.3d 884 (6th Cir.2012), *cert.*

denied, —— U.S. ——, 134 S.Ct. 92, 187 L.Ed.2d 254 (U.S.2013). The Sixth Circuit in *Serrano* held the EEOC may pursue a pattern or practice claim under the *Teamsters* framework pursuant to its § 706 authority. *Id.* at 896. The Sixth Circuit noted that a reading of § 706 to allow *Teamsters*-like pattern or practice claims might create some overlap with § 707. *Id.* at 895–96. Ultimately, however, the Sixth Circuit found the two statutes were not "superfluous" even if *Teamsters* applies to § 706 claims. *Id.* at 896. The Sixth Circuit is the only circuit court to rule on this issue.

■ Having considered the arguments of the parties and examined the case law, this Court finds the Sixth Circuit decision in *Serrano v. Cintas* persuasive and clarifies its August 19, 2013 Order and Reasons by specifying that the EEOC may bring its pattern and practice claims under both §§ 706 and 707 using the *Teamsters* framework and that both claims will be tried in Phase I. The decisions cited by the district court in *Bass Pro* were decided before the Sixth Circuit's ruling in *Serrano.* Furthermore, at least one other district court has followed *Serrano* and similarly found the EEOC has authority to bring a pattern or practice claim under § 706. *See e.g. EEOC v. Pitre, Inc.,* 908 F.Supp.2d 1165 (D.N.M.2012) (finding a pattern or practice claim for sexual harassment could be brought under § 706).[25]

**(B) Jury Trial**

■ The Court also clarifies its August 19, 2013 Order and Reasons by specifying that all the EEOC's Phase I claims

---

**25.** Only one district court has appeared to limit the EEOC's authority to bring a pattern or practice claim to § 707 after the Sixth Circuit holding in *Serrano.* See *EEOC v. JBS USA LLC,* in which the District Court of Nebraska found the EEOC could not pursue a § 706 claim under the *Teamsters* framework. 2012 WL 5906537, 2012 U.S. Dist. LEXIS 167117 (D.Neb. November 26, 2012). However, this Court does not find that decision persuasive.

under §§ 706 and 707 will be tried by a jury.[26] The EEOC's § 706 claim seeks compensatory and punitive damages recoverable under 42 U.S.C. § 1981a. Section 1981a(c) expressly grants both plaintiff and defendant the right to demand a jury trial when compensatory and punitive damages are sought in intentional discrimination claims under Title VII. 42 U.S.C. § 1981a(c). Although only prospective injunctive relief is available at the successful conclusion of Phase I, the trier of fact will determine factual issues that necessarily bear upon the recovery of compensatory and punitive damages in Phase II. "Once the right to a jury trial attaches to a claim ... it extends to all factual issues necessary to resolving that claim." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir.1998) (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)).

## II.  Phase II

### (A) Effect of Presumption from Phase I

■ If the EEOC is successful at the Phase I "liability" trial, Phase II will proceed with the individual employees' entitlement to relief for the proven discriminatory patterns or practices. Following *Teamsters*, the employees will enjoy an inference that "any particular employment decision, during the period in which the discriminatory policy was in force, was made pursuant of that policy." *Teamsters*, 431 U.S. at 362, 97 S.Ct. 1843. The Second Circuit in *Robinson v. Metro–North Commuter R.R.* explained the bifurcation model and the effects of the presumption:

> The effect of the presumption from the liability stage is to substantially lessen each class member's evidentiary burden relative to that which would be required if the employee were proceeding separately with an individual disparate treatment claim under the *McDonnell Douglas* framework. Rather than having to make out a prima facie case of discrimination and prove that the employer's asserted business justification is merely a pretext for discrimination, a class member at the remedial stage of a pattern or practice claim need only show that he or she suffered an adverse employment decision and therefore was a potential victim of the proved [classwide] discrimination. The burden then shifts to the employer to demonstrate that the individual [was subjected to the adverse employment decision] for lawful reasons. If the employer is unable to establish a lawful reason for an adverse employment action, the employee is entitled to individualized equitable relief, which may include back pay and front pay. Class members who seek compensatory damages in addition to individualized equitable relief must then prove that the discrimination caused them emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, [or] other nonpecuniary losses.

*Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 159–60 (2d Cir.2001) (internal quotations and citations omitted).

■ The framework established in *Robinson* was also later adopted in *EEOC v. Sterling Jewelers, Inc.*, 788 F.Supp.2d 83 (W.D.N.Y.2011). After a jury determines whether Signal engaged in a pattern or practice of discrimination in Phase I, Phase II will address issues concerning each individual employees' claim for relief, including whether Signal can meet its bur-

---

**26.** Signal requested a jury in its answer to the EEOC's First Amended Complaint. (Doc. 199).

den of rebuttal as to each class member, and if not, the remedies to which each individual employee is entitled, including back pay, front pay, and compensatory and punitive damages. *Id.* at 92.

█ If the EEOC fails to prove a pattern or practice in Phase I, individuals may proceed under the *McDonnell Douglas* model to prove each individual employee's entitlement to damages based upon alleged discrimination, without the benefit of any presumption.