**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SIE ERVINE, as an individual and as Executor of the Estate of Charlene Elaine Ervine, deceased, <br> *Plaintiff-Appellant*, <br><br> v. <br><br> DESERT VIEW REGIONAL MEDICAL CENTER HOLDINGS, LLC; GEORGES TANNOURY, M.D., a domestic corporation; GEORGES TANNOURY, M.D., an individual, <br> *Defendants-Appellees*. | No. 12-15059 <br><br> D.C. No. 2:10-cv-01494-JCM-GWF <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted
February 12, 2014—San Francisco, California

Filed May 29, 2014

Before: Diarmuid F. O'Scannlain and Mary H. Murguia,
Circuit Judges, and Lynn S. Adelman, District Judge.[*]

Opinion by Judge O'Scannlain

---

[*] The Honorable Lynn S. Adelman, District Judge for the U.S. District Court for the Eastern District of Wisconsin, sitting by designation.

## SUMMARY[**]

### Rehabilitation Act / Americans with Disabilities Act

The panel vacated in part and reversed in part the district court's summary judgment on claims under the Rehabilitation Act and the Americans with Disabilities Act against health care providers for failure to communicate effectively with a person who was deaf.

The panel held that the plaintiff lacked standing to bring claims for injunctive relief under Title III of the Americans with Disabilities Act because he did not show a real and immediate threat that he would be denied effective communication by the defendants, either as a patient in his own right or as a companion to another patient. The panel vacated the district court's grant of summary judgment in favor of the defendants as to these claims and remanded with instructions to dismiss them without prejudice for lack of jurisdiction.

The panel held that the district court erred in concluding that the plaintiff's claims under § 504 of the Rehabilitation Act, brought individually and on behalf of his wife's estate, were untimely under Nevada's two-year statute of limitations for personal injuries. The panel held that so long as an alleged violation of § 504 is a discrete and independently wrongful discriminatory act, it causes a new claim to accrue and a new limitations period to run. The panel reversed the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

district court's grant of summary judgment in favor of the defendants as to the Rehabilitation Act claims.

## COUNSEL

Dale H. Boam, Salt Lake City, Utah, argued the cause and filed the briefs for the plaintiffs-appellants.  With him on brief was Norman N. Hirata, Las Vegas, Nevada.

Eric K. Stryker, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Las Vegas, Nevada, argued the cause and filed the brief for defendant-appellee Desert View Regional Medical Center Holdings, LLC.

John H. Cotton, Cotton, Driggs, Walch, Holley, Woloson & Thompson, Las Vegas, Nevada, argued the cause and Christopher G. Rigler filed the brief for defendants-appellees Georges Tannoury, M.D., a domestic corporation and Georges Tannoury, M.D., an individual.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are presented with claims under the Rehabilitation Act against health care providers for failure to communicate effectively with a person who is deaf.

I

Charlene Ervine, who was deaf, died of cancer in November 2009.  In the years before her death, she sought

treatment at Desert View Regional Medical Center, a hospital serving Pahrump, Nevada, and from Dr. Georges Tannoury, a practitioner who owned Specialty Medical Center in that town.    Her husband, Sie Ervine, who is also deaf, accompanied her on many of her medical visits.  Both Mr. and Mrs. Ervine communicated primarily through American Sign Language.

Mr. Ervine contends that Desert View and Dr. Tannoury on several occasions failed to take the steps necessary to communicate effectively with the Ervines about Mrs. Ervine's treatment.  Specifically, neither provided the Ervines with an interpreter during their visits and neither was prepared to provide an interpreter when necessary.

According to Mr. Ervine, Desert View had refused to provide a sign-language interpreter from the first time Mrs. Ervine visited the hospital, in August 2007.  As to Dr. Tannoury, Mrs. Ervine reported—as early as April 2008—to the Nevada Deaf and Hard of Hearing Advocacy Resource Center ("Advocacy Resource Center" or "the Center") that she was having problems with her doctor, who refused to provide her with an interpreter.  Despite the Center's help, her difficulties with Dr. Tannoury's office continued.    On November 12, 2008, an administrative assistant informed the Center that Dr. Tannoury's office did not "provide sign language interpreters" because it was "a private practice." The assistant later explained that Dr. Tannoury made such decisions and had "refused to provide" interpreters.    The Ervines' difficulties with Desert View and Dr. Tannoury continued until Mrs. Ervine's death.

## II

Mr. Ervine, individually and on behalf of his wife's estate, sued Desert View and Dr. Tannoury[1] on September 1, 2010, alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, as well as negligent and intentional infliction of emotional distress under state law. He filed an amended complaint on September 14.

Dr. Tannoury moved for summary judgment, arguing that the Ervines knew or should have known of their injuries well before the two-year statute of limitations period. Mrs. Ervine complained to the Advocacy Resource Center about Dr. Tannoury's failure to provide her with an interpreter in April 2008 and discussed suing him by June. Desert View joined Dr. Tannoury's motion, similarly insisting that Mrs. Ervine knew the hospital had denied her an interpreter the first time she visited, in August 2007. "There was no interpreter," Mr. Ervine testified during his deposition, "and that was wrong of the hospital." In short, according to them, the Ervines' claims accrued once, the first time each denied Mrs. Ervine an interpreter. As that happened more than two years before Mr. Ervine filed, his suit was untimely, they contended.

To the contrary, asserted Mr. Ervine in opposition, in this case "each denial of effective communication is a separate and unique injury starting the clock over each time." Because

---

[1] Mr. Ervine sued Georges Tannoury, M.D., an individual, as well as Georges Tannoury, M.D., a domestic corporation. We refer to both, collectively, as "Dr. Tannoury." He also sued Specialty Medical Center and Kerry Malin, its employee. Both have been dismissed and neither is a party to this appeal.

Dr. Tannoury and Desert View refused to provide interpreters as late as March 2009 or August 2009, respectively, his suit was timely.

The district court granted in part and denied in part the motion for summary judgment. As relevant here, it denied summary judgment on statute-of-limitations grounds because no competent evidence established when the Ervines' causes of action accrued. The court declined to consider, as inadmissible hearsay, entries in a logbook detailing Mrs. Ervine's discussions with the Advocacy Resource Center.

On a motion for reconsideration, however, the court determined that Mr. Ervine had manifested an adoption or belief in the truth of the logbook statements, rendering them admissible. *See* Fed. R. Evid. 801(d)(2)(B). Such, coupled with his deposition, "establish[ed] that his claims are time-barred."

Apparently, the district court agreed with Desert View and Dr. Tannoury that the Ervines had one claim of discrimination against each of them, which accrued the first time each denied the Ervines an interpreter. Despite acknowledging the argument that "each refusal to provide an interpreter is an independent discriminatory act," the court did not analyze such argument or explain why it was incorrect.

Mr. Ervine timely appealed.

## III

Unlike the other claims, Mr. Ervine brings claims under Title III of the ADA solely as an individual, not on behalf of

Mrs. Ervine's estate.  Before turning to the timeliness of his complaint, we consider whether he has standing to assert such claims.  *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc) ("[A] disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation.").

Neither Desert View nor Dr. Tannoury argued to the district court that Mr. Ervine lacked standing, and the court did not discuss standing in its orders.  But "standing is not subject to waiver," *United States v. Hays*, 515 U.S. 737, 742 (1995), and "[f]ederal courts are required sua sponte to examine jurisdictional issues such as standing," *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 868 (9th Cir. 2002).  Moreover, "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review."  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (internal quotation marks omitted).

Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief.  *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)).  So Mr. Ervine must not only demonstrate the familiar requirements for standing—injury-in-fact, traceability, redressability—but also "a sufficient likelihood that he will be wronged again in a similar way."  *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983)).  That is to say, he must show he faces a "real and immediate threat of repeated injury."  *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

An ADA plaintiff establishes such a real and immediate threat if "he intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury." *Chapman*, 631 F.3d at 948; *see, e.g.*, *Fortyune*, 364 F.3d at 1082 (holding that plaintiff who suffered discrimination only once was likely to suffer repeat injury where he returned to place of public accommodation often and discrimination was pursuant to written policy).

Alternatively, a plaintiff who "has visited a public accommodation on a prior occasion" demonstrates a real and immediate threat if he "is currently deterred from visiting that accommodation by accessibility barriers." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008); *see also Pickern*, 293 F.3d at 1136–37. Title III of the ADA "explicitly provides that it does not require 'a person with a disability to engage in a *futile gesture* if such person has actual notice that a person or organization . . . does not intend to comply' with the ADA." *Pickern*, 293 F.3d at 1136 (quoting 42 U.S.C. § 12188(a)(1)). When a plaintiff sought an injunction against a 7-Eleven store 550 miles away from his home, we held he had standing: he was "currently deterred from visiting the store"; it was "conveniently located near his favorite fast food restaurant in Anaheim"; and he planned to visit Anaheim once a year for his annual trips to Disneyland. *Doran*, 524 F.3d at 1038, 1040–41. He did not intend, however, to visit the 7-Eleven until it removed the challenged access barriers. *Id.* at 1041.

Mr. Ervine seeks an injunction ordering Desert View and Dr. Tannoury to "furnish appropriate auxiliary aids and services" to him "to ensure effective communication." 28 C.F.R. § 36.303(c)(1). But he has not expressed any intent to return to Desert View or to Dr. Tannoury's practice for

medical treatment.  He admitted in his deposition that he had never been a patient at Desert View and had no reason to believe that he would ever be a patient of Desert View in the near future.  And he has not been denied an interpreter in Pahrump since his wife's death.

Although he does not intend to return to either medical provider, Mr. Ervine asserts "that he is currently aware of barriers to access at Desert View Hospital and Dr. Tannoury's, and that these barriers currently deter him."  As Desert View and Dr. Tannoury point out, such assertions, made for the first time in his opening brief, are completely unsupported by the record.  Mr. Ervine did not allege in his complaint that he was deterred from seeking medical services because of discrimination.  Instead, he alleged that he was denied effective communication when he accompanied his wife to her appointments, so he was not able "to effectively understand her medical issues and to better understand how he could help and support her."  The failure to provide an interpreter continued "up to and including the date of Mr. Ervine's wife's death," but not necessarily beyond.  And, as noted, Mr. Ervine has never been a patient of Desert View and has no imminent plans to return.  He cannot manufacture standing through bald assertion, contradicted by the record. *See Doran*, 524 F.3d at 1041 (holding that plaintiff had standing where his "deposition testimony demonstrate[d] both . . . deterrence . . . and his intention to return in the future"); *Pickern*, 293 F.3d at 1137–38 (holding that plaintiff met standing requirements by stating in his deposition "that he is currently deterred from attempting to gain access" to defendant's store).

Mr. Ervine also asserts that Desert View is the only regional hospital where he lives.  Using Desert View's

services is thus a question of "when," not "if." Once again though, there is no evidence in the record regarding the number of accessible hospitals near Mr. Ervine, nor their distance from his home. And even if his assertion is accurate, it would not show that a visit to Desert View, much less a failure to provide effective communication to him, is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). On this record, the prospect that Desert View "will engage in (or resume)" conduct harmful to Mr. Ervine is simply "too speculative to support standing." *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

To be clear, Mr. Ervine does not lack standing to pursue injunctive relief merely because he has never been a patient of either Desert View or Dr. Tannoury. The ADA's implementing regulations impose an obligation on public accommodations "to provide effective communication to companions who are individuals with disabilities." 28 C.F.R. § 36.303(c)(1). But it is not the presence or "absence of a past injury" that determines Article III standing to seek injunctive relief; it is the imminent "prospect of future injury." *Chapman*, 631 F.3d at 951 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 & n.2 (1992)). Mr. Ervine has not shown a real and immediate threat that he will be denied effective communication by Desert View or Dr. Tannoury either as a patient in his own right or as a companion to another patient.

Because Mr. Ervine's complaint is "jurisdictionally defective" and he has failed to introduce any evidence to cure the defect, he lacks standing to bring his ADA claims. *See id.*

at 954.**[2]**  The district court should therefore have dismissed the claims for lack of jurisdiction.  *See id.* at 955; *see also* Fed. R. Civ. P. 12(b)(1).

IV

Section 504 of the Rehabilitation Act prohibits organizations that receive federal funds, including health care providers, from discriminating against individuals with disabilities.  29 U.S.C. § 794(a), (b)(3)(A)(ii).  Health providers who receive federal funds must "provide appropriate auxiliary aids to persons with impaired sensory . . . skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."  45 C.F.R. § 84.52(d).  "[A]uxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision."  *Id.* § 84.52(d)(3).  Unlike Title III of the ADA, Section 504 permits individuals to seek damages as a remedy in certain circumstances.  *See Mark H. v. Lemahieu*, 513 F.3d 922, 930, 938 (9th Cir. 2008).  We must decide whether Mr. Ervine's claims under the Rehabilitation Act, brought individually and on behalf of his wife's estate, are timely.

The statute of limitations for claims under Section 504 of the Rehabilitation Act is provided by analogous state law. *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 823 n.11, *amended*, 271 F.3d 910 (9th Cir. 2001).  All parties agree that the analogous state law here is Nevada's two-year statute of limitations for personal injuries.    Nev. Rev. Stat.

---

**[2]** Because we conclude that Mr. Ervine lacks standing to bring his ADA claim, we need not consider Dr. Tannoury's argument that, having sold his medical practice, he is not susceptible to such claim.

§ 11.190(4)(e); *cf. Douglas*, 271 F.3d at 823 n.11 ("[B]oth parties agree that California's one-year statute of limitations for personnel [sic] injuries governs [plaintiff's] Section 504 claim."). Mr. Ervine filed his complaint on September 1, 2010.[3] His suit is timely insofar as the claims accrued on or after September 1, 2008.

Although the limitations period is adopted from state law, a claim under the Rehabilitation Act accrues according to federal law. *See Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010); *cf. Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."). "A federal claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012).

## A

Our court has not decided whether each discrete discriminatory act causes a new claim to accrue under Section 504 of the Rehabilitation Act. But we have discussed such claims under Section 501 of the Act. *See Cherosky v. Henderson*, 330 F.3d 1243, 1245–46 (9th Cir. 2003). In *Cherosky*, employees of the Postal Service claimed their employer discriminated against them by refusing to provide

---

[3] Mr. Ervine filed an amended complaint on September 14, 2010, which the district court described as the date he "filed a complaint." At present, it does not matter whether he sued on September 1 or September 14, 2010. Thus, we assume for the purposes of this opinion that the amended complaint relates back to the date of the original complaint. *See* Fed. R. Civ. P. 15(c).

respirators. *Id.* at 1245. Under the relevant federal regulations, they were required before suing to consult with the Equal Employment Opportunity Commission "within 45 days of the date of the matter alleged to be discriminatory." *Id.* (quoting 29 C.F.R. § 1614.105(a), (a)(1)). The employees failed to consult with the EEOC within 45 days of the denial of respirators, and were unable to "point to any discrete, discriminatory act that occurred within the 45-day period." *Id.* Nonetheless, they argued their claims were timely under the "continuing violations doctrine." *Id.* at 1246.

We turned to *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), to resolve their claims. Although *Morgan* concerned Title VII of the Civil Rights Act of 1964, we noted that "[i]t applies with equal force to the Rehabilitation Act and to actions arising under other civil rights laws." *Cherosky*, 330 F.3d at 1246 n.3; *see also, e.g.*, *Pouncil*, 704 F.3d at 581 (applying *Morgan* to § 1983 free exercise and Religious Land Use and Institutionalized Persons Act claims).

Of course, this case is not subject to a 45-day consultation deadline; it is governed by the statute of limitations borrowed from state law. Although the deadlines may be different, there is no reason to suppose that Section 504 claims accrue differently from Section 501 claims. Both claims accrue according to federal law. Thus, we also turn to *Morgan* for guidance.

*Morgan* distilled several principles that are relevant to the claims at issue here:

> First, discrete discriminatory acts are not actionable if time barred, even when they are

related to acts alleged in timely filed charges. *Each discrete discriminatory act starts a new clock for filing charges alleging that act. . . .* The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are *independently* discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

536 U.S. at 113 (emphasis added).

In *Pouncil*, we emphasized that an act must be "discrete" or "independently wrongful" to cause a new claim to accrue. 704 F.3d at 581. If the act is merely the "delayed, but inevitable, consequence" of a prior discriminatory act, it will not cause a new statute of limitations to run. *See id.* So, for example, the claim of a professor who was denied tenure in a discriminatory fashion accrued when the discriminatory decision was made, not when the professor's contract expired. *Id.* at 577–78 (discussing *Del. State Coll. v. Ricks*, 449 U.S. 250 (1980)).

Pouncil maintained that the denial by prison officials in 2008 of his request for a conjugal visit with his second wife violated his rights under the Free Exercise Clause and RLUIPA. *Id.* at 570. Prison officials had previously denied in 2002 his request for a conjugal visit with his first wife, each time citing the same prison regulation. *Id.* We concluded that the second denial was "a separate, discrete act, rather than a mere effect of the 2002 denial." *Id.* at 581. It

was an "independently wrongful" act because Pouncil's claim did "not rely on any acts that occurred before the statute of limitations period to establish a violation" of his rights. *Id.* Or, as we "put it another way, the 2008 denial relied on a new application of the regulation to a new request for a conjugal visit, it did not rely on the 2002 denial as barring all subsequent requests for conjugal visits." *Id.*

We apply these principles to the Rehabilitation Act: So long as an alleged violation of Section 504 of the Rehabilitation Act is a discrete and independently wrongful discriminatory act, it causes a new claim to accrue and a new limitations period to run. A claim under the Act will not be untimely merely because similar, even identical, violations of the Act occurred outside the statutory period.

### B

It is beyond dispute that Mr. Ervine alleges a series of discrete and independently wrongful discriminatory violations of the Rehabilitation Act. His complaint discusses Desert View and Dr. Tannoury's "acts and omission [sic] including failing or refusing to provide [the Ervines] with effective communication through interpreters, even after [they] requested interpreters." He contends "[d]efendants failed to afford qualified interpreters at key points in the treatment process including diagnosis, testing and decisions requiring informed consent." And those "violations caused all [the Ervines'] compensable injury." *See Cherosky*, 330 F.3d at 1246 n.4 ("To illustrate the meaning of the term 'discrete discriminatory act,' the Court identified the following examples: 'termination, failure to promote, denial of transfer, or refusal to hire.'" (quoting *Morgan*, 536 U.S. at 122)).

The summary judgment evidence supports such characterization of their complaint. Logbooks[4] from the Advocacy Resource Center are replete with allegations that the Ervines were denied an interpreter during particular medical appointments. And at least one alleged discriminatory act appears to have taken place in November 2008, within the limitations period. On November 12, the Center called Dr. Tannoury's office to inquire whether Mrs. Ervine would have an interpreter at her November 17 appointment. The office manager's assistant informed the Center that Dr. Tannoury's office, being a private practice, did not provide sign language interpreters.[5]

Nothing about the Rehabilitation Act claims suggests that failure to provide interpreters was merely a delayed but inevitable consequence of a prior discriminatory decision. Even if the alleged violations were the result of a discriminatory policy, that would not render the Ervines' claims for discrete discriminatory acts untimely. *See Cherosky*, 330 F.3d at 1247 ("Just as the wrong in *Bazemore* [*v. Friday*, 478 U.S. 385 (1986),] accrued each time the salary policy was implemented, the alleged wrong here occurred and accrued when the policy was invoked to deny an individual employee's request."); *see also Pouncil*, 704 F.3d at 581.

---

[4] The parties dispute on appeal whether the logbooks are admissible evidence. We assume, *arguendo*, that they are.

[5] Whether this or any other alleged violation is actually meritorious and timely is not properly before us. We leave it to the district court to answer such question in the first instance, using the legal standard we announce here. Similarly, we leave for the district court to consider the evidentiary sufficiency of the claims against Desert View.

C

Because each and every discrete discriminatory act causes a new claim to accrue under Section 504 of the Rehabilitation Act, any discriminatory acts that Desert View or Dr. Tannoury took after September 1, 2008[6] are actionable. "All prior discrete discriminatory acts," however, "are untimely filed and no longer actionable." *Morgan*, 536 U.S. at 115.

V

Mr. Ervine lacks standing to bring his claims under Title III of the ADA. We vacate the grant of summary judgment as to those claims, and remand with instructions to dismiss them without prejudice for lack of jurisdiction.

The district court erred in finding the claims under Section 504 of the Rehabilitation Act untimely. Because we are returning the Rehabilitation Act claims to the district court for proceedings not inconsistent with our opinion, we also return the state law claims, which no party has discussed.

**VACATED in part, REVERSED in part, and REMANDED.** Each party shall bear its own costs on appeal.

---

[6] *See supra* note 3.