PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-2214

SHARON T. THOMAS,

Plaintiff - Appellant,

v.

THE SALVATION ARMY SOUTHERN TERRITORY; F. BRADFORD BAILEY;
THE SALVATION ARMY; BOBBY LANCASTER; DERONDA METZ; BARBARA
GREEN; VICTORY CHRISTIAN CENTER, INCORPORATED; CHURCH IN THE
CITY MINISTRIES; CATHY DOE; FRIENDSHIP COMMUNITY DEVELOPMENT
CORPORATION, My Sister's House Transitional Living Center;
IRIS HUBBARD,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte.  Robert J. Conrad,
Jr., District Judge.  (3:14-cv-00403-RJC-DCK)

Argued:  September 21, 2016          Decided:  November 8, 2016

Before WILKINSON and FLOYD, Circuit Judges, and Irene M. KEELEY,
United States District Judge for the Northern District of West
Virginia, sitting by designation.

Affirmed as modified by published opinion.  Judge Wilkinson
wrote the opinion, in which Judge Floyd and Judge Keeley joined.

**ARGUED:** Gregory Dolin, UNIVERSITY OF BALTIMORE SCHOOL OF LAW,
Baltimore, Maryland, for Appellant.  Matthew David Lincoln,
MOORE & VAN ALLEN PLLC, Charlotte, North Carolina, for
Appellees.  **ON BRIEF:** Catherine Florea, Third Year Law Student,

Marie Langlois, Second Year Law Student, UNIVERSITY OF BALTIMORE SCHOOL OF LAW, Baltimore, Maryland, for Appellant.

————————

WILKINSON, Circuit Judge:

Sharon Thomas appeals the dismissal under 28 U.S.C. § 1915(e) of her claims against three charitable organizations, which she says unlawfully refused to admit her to homeless shelters because of her alleged mental health disability. We affirm the judgment of dismissal as modified to indicate that it be without prejudice.

## I.

Thomas was receiving behavioral health services from Monarch Mental Health Care, a non-profit organization, when she became homeless on July 10, 2012. Monarch referred her to defendant Salvation Army. When she arrived at the Salvation Army shelter on July 12, 2012, Thomas completed some preliminary paperwork, agreed to follow the shelter's rules, and was admitted.

The Salvation Army shelter was crowded, and on July 16, a Salvation Army staff member informed Thomas that she would be transferred to defendant Church in the City, a shelter run by the third and final defendant, Victory Christian Center.[1] During

---

[1] Thomas's original complaint named an additional charity – My Sister's House – and various employees of the charities as defendants. Her counseled brief advances arguments only against the Salvation Army, Church in the City, and Victory Christian Center. Because Thomas has waived claims against the other defendants, we address only her claims against the Salvation (Continued)

an intake interview with a Church in the City nurse, Thomas disclosed her mental health issues. In her complaint, Thomas describes Church in the City as having strict rules and as being "very clean and quiet." J.A. 13. Thomas stayed at Church in the City for almost a month before being evicted, and she claims that she followed all of the shelter's rules during her stay.

While at Church in the City, Thomas visited the Salvation Army shelter twice. First, on July 19, Thomas completed the Salvation Army's official intake assessment paperwork. In this paperwork, Thomas disclosed that she was receiving behavioral mental health services and authorized the release of some medical information to the Salvation Army. Second, on July 31, Thomas went to the Salvation Army to see a doctor to get medication. Thomas does not specify what medication she was receiving, but she notes that the doctor referred her to a behavioral health center. On the same visit, Thomas met with her Salvation Army case manager. The meeting included a discussion of Thomas's mental health issues.

Thomas's problems with the shelters began on August 12, when Church in the City evicted her. The shelter did not give Thomas a reason for her ejection. Another woman was evicted at

_____

Army, Church in the City, and Victory Christian Center. See Slezak v. Evatt, 21 F.3d 590, 593 n.2 (4th Cir. 1994).

4

the same time for missing the shelter's curfew, though Thomas avers that she never missed curfew. Thomas's complaint notes that she had been given additional chores the day before – cleaning three showers instead of two – by a volunteer who had, a few weeks earlier, told Thomas not to question the Bible during a Bible study class.

From August 12 through August 15, Thomas tried and failed to be admitted to the Salvation Army shelter a number of times. Immediately after being ejected from Church in the City, Thomas went to the Salvation Army shelter. She was told that she would not be allowed to stay there if she had been ejected from Church in the City. That same day, Thomas was hospitalized for chest pains, and a hospital social worker called the Salvation Army on her behalf. The social worker was informed that Thomas's Salvation Army case worker had decided that Thomas would not be admitted to the Salvation Army shelter.

Thomas herself called the Salvation Army twice the next day, August 13. On the first phone call, Thomas's case manager told her that she had been ejected from Church in the City for violating curfew. This call ended after Thomas accused her case manager of acting unethically. On the second phone call, the director of the Salvation Army shelter told Thomas she had been ejected from Church in the City because she was not a good fit.

The following night, August 14, Thomas had nowhere to stay and went to the police department for help. Two police officers escorted her to the Salvation Army shelter, where she was again denied entry. This time, a staff member told Thomas that the director of the shelter had instructed her not to let Thomas stay. The staff member did not give a specific reason for that instruction but apparently believed it was due to mental health issues and that if Thomas received a mental health evaluation, she would be admitted to the shelter. Thomas went to a psychiatric emergency room and was examined by a psychiatrist. The next day, August 15, Thomas returned to the Salvation Army shelter with her psychiatric discharge papers. She was again refused admission to the shelter, though this time Thomas was not given a reason for the denial.

Thomas does not allege that she sought admission at the Salvation Army shelter after August 15, but she did continue to seek an answer for why she had been denied admission. On September 12, 2012, she received an email from the Area Commander for the Salvation Army, explaining that he had investigated her case and that the denial of services was justified because Thomas had "exhibited disrespect and hostility toward the staff." J.A. 21. The Area Commander offered shelter if Thomas submitted to "a mental health evaluation and stabilization services from" a behavioral mental health

6

organization. J.A. 21. In response, Thomas requested records of her stay and of the Salvation Army's relationship with Church in the City. On October 23, 2012, Thomas received an email from another Salvation Army employee, denying her request for records.

Nearly two years later, on July 24, 2014, Thomas filed this action in the Western District of North Carolina, moving to proceed in forma pauperis. The district court granted Thomas's motion. In the same order, however, the district court dismissed all of Thomas's claims under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief could be granted. In addition, the district court warned Thomas that if she continued to file meritless lawsuits, it would require her to show cause as to why the court should not enter a pre-filing injunction against her. Thomas now appeals.

## II.

Thomas challenges the dismissal of her claims under 42 U.S.C. § 1983, 42 U.S.C. § 1985, the Americans with Disabilities Act ("ADA"), the Fair Housing Act ("FHA"), and the Rehabilitation Act. The district court dismissed these claims under 28 U.S.C. § 1915(e)(2)(B)(ii). "The standards for reviewing a dismissal under § 1915(e)(2)(B)(ii) are the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6)." De'Lonta v. Angelone, 330 F.3d 630, 633

(4th Cir. 2003). Thus, we review this dismissal de novo and accept pleaded facts as true. King v. Rubenstein, 825 F.3d 206, 212, 214 (4th Cir. 2016). While we construe allegations in a pro se complaint liberally, a complaint still "must contain 'enough facts to state a claim for relief that is plausible on its face.'" Id. at 214 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). We shall address each of Thomas's various claims in turn.[2]

A.

Thomas's § 1983 claim cannot proceed because none of the defendants are state actors. To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). The color of law requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Id. at 50 (internal quotations omitted). In rare cases, the state can "so dominate[] [private] activity as to convert it to state action."

---

[2] Thomas advances arguments for her § 1983 and § 1985 claims in her informal brief but not in her counseled brief. Appellant's Reply Br. 2 n.1. We have held in similar circumstances that this results in waiver of the claims. Slezak, 21 F.3d at 593 n.2 (declining to consider issues not raised in counseled brief). Nonetheless, we will in the exercise of our discretion address her § 1983 and § 1985 claims.

8

<u>Philips v. Pitt Cnty. Mem'l Hosp.</u>, 572 F.3d 176, 181 (4th Cir. 2009). The defendants here are three private charities, and Thomas has not alleged any facts that even remotely suggest that defendants' actions were attributable to the state. Without state action, Thomas has no § 1983 claim.

B.

Thomas's § 1985 claim of a civil conspiracy between the Salvation Army and Church in the City must also be dismissed because there are no allegations to support the existence of any conspiracy. To bring a claim under 42 U.S.C. § 1985, a plaintiff must show:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

<u>Simmons v. Poe</u>, 47 F.3d 1370, 1376 (4th Cir. 1995). Allegations of "parallel conduct and a bare assertion of a conspiracy" are not enough for a claim to proceed. <u>A Soc'y Without A Name v. Virginia</u>, 655 F.3d 342, 347 (4th Cir. 2011) (quoting <u>Twombly</u>, 550 U.S. at 556).

Thomas provides no facts to suggest that the Salvation Army and Church in the City conspired to do anything, much less to deprive her of rights because of her alleged mental disability. For example, Thomas claims that her Salvation Army

9

identification badge included a mention of Church in the City and that she was told she could not return to the Salvation Army after being evicted from Church in the City. But these facts do not show any coordination or conspiracy – they simply show two charities working to help the same population of homeless people in Charlotte. Thomas's complaint offers only conclusory allegations that the Salvation Army conspired with Church in the City, and that is not enough to proceed on a claim under § 1985.

C.

Thomas also raises a claim under the Americans with Disabilities Act but lacks standing to bring it. Title III of the ADA prevents discrimination on the basis of a disability in places of public accommodation. 42 U.S.C. § 12182. It provides a private right of action for injunctive relief but no right of action for monetary relief. 42 U.S.C. § 12188; see also Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC, 753 F.3d 862, 867 (9th Cir. 2014) ("Damages are not an available remedy to individuals under Title III of the ADA; individuals may receive only injunctive relief."). Injunctive relief, however, "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).

10

Thomas fails to show any real or immediate threat that she will be wronged again. Any denial of access to the shelters occurred almost two years before Thomas filed this action. Her complaint does not allege that she is still homeless or that the defendants would still deny her access to the shelters because of her disability. Moreover, Thomas indicates that she filed her complaint "due [to] the persistent and distressing memories and thoughts about the experiences of abuse and discrimination," J.A. 24, not to prevent future discrimination. Without the threat of future harm, Thomas is not entitled to injunctive relief and thus has no valid claim under Title III of the ADA.

In dismissing Thomas's ADA claim for failure to exhaust administrative remedies, the district court erred by characterizing her claim as an employment claim under Title I of the ADA. The district court was correct that Title I requires a plaintiff to exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court. 42 U.S.C. § 12117; see also Sydnor v. Fairfax Cnty., 681 F.3d 591, 593 (4th Cir. 2012). But because Thomas's claims do not concern her employment, they do not fall under Title I and thus are not subject to the administrative exhaustion requirement. McInerney v. Rensselaer Polytechnic Inst., 505 F.3d 135, 138 (2d Cir. 2007) (per curiam) ("Title III, unlike Title I, does not require administrative

11

exhaustion."). Nonetheless, we may affirm the district court on alternate grounds, <u>Cochran v. Morris</u>, 73 F.3d 1310, 1315 (4th Cir. 1996) (en banc), and we have done so here.

In her original complaint, Thomas cites the sections of the ADA that comprise Title II. Title II, however, applies only to "the services, programs, or activities of a public entity." 42 U.S.C. § 12132; <u>see also</u> <u>Pa. Dep't of Corr. v. Yeskey</u>, 524 U.S. 206, 209 (1998). None of the defendants here are public entities, so Thomas cannot proceed under Title II of the ADA either.

### D.

Thomas's FHA claim was properly dismissed because her complaint does not contain a plausible allegation of discrimination. As relevant here, the FHA makes it unlawful to "make unavailable or deny . . . a dwelling to any buyer or renter because of a handicap," 42 U.S.C. § 3604(f)(1), or to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of a handicap." 42 U.S.C. § 3604(f)(2). A handicap is "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h). The Salvation Army argues that homeless shelters are not covered under § 3604(f) because the residents are not buyers or renters and because a homeless shelter does not meet the definition of a

12

dwelling under the FHA. Courts have differed on these points. See, e.g., Hunter ex rel. A.H. v. D.C., 64 F. Supp. 3d 158, 177 (D.D.C. 2014) (homeless shelter is a dwelling under the FHA); Intermountain Fair Hous. Council v. Boise Rescue Mission Ministries, 717 F. Supp. 2d 1101, 1109 (D. Idaho 2010), aff'd on other grounds, 657 F.3d 988 (9th Cir. 2011) (homeless shelter is not a dwelling under the FHA). We see no need to reach these questions here because Thomas's complaint independently suffers from serious defects, as discussed below.

One such defect is that Thomas's complaint fails to adequately identify her mental disability. Thomas provides limited evidence in her complaint that she has some type of mental illness – she received care from a behavioral health organization, she had an appointment with a doctor, and she was on medication. In her informal appellate brief, Thomas specifies her mental illness as a mood disorder. This evidence, though, does not suggest that her mental illness is a handicap covered by the FHA. Moreover, Thomas alleges that she was "mentally stable" and that the mental evaluation requested by the Salvation Army was "unnecessary." J.A. 5, 20. These facts do not give rise to a "reasonable inference," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), that Thomas is handicapped under the FHA.

Another defect is that Thomas's complaint does not draw a sufficient nexus of causation between whatever mental illness

13

she may have and the defendants' actions. To state a claim under the FHA, Thomas must show that the defendants denied her housing "because of" her handicap. 42 U.S.C. § 3604(f)(1). Thomas's allegation against Church in the City on this point is purely conclusory. Church in the City did not give Thomas a reason for the denial of shelter, and nothing in Thomas's complaint suggests that the denial was because of her alleged mental disability. While Thomas's allegations against the Salvation Army are somewhat more detailed, the complaint does not make a plausible allegation that the Salvation Army unlawfully denied Thomas shelter "because of" a mental disability. Even when construed liberally and with all reasonable inferences made in Thomas's favor, De'Lonta, 330 F.3d at 633, this is not a "claim to relief that is plausible on its face," Twombly, 550 U.S. at 570.

The communications between the Salvation Army and Thomas indicate that the Salvation Army had legitimate reasons to be wary of admitting Thomas and sought reasonable reassurance that Thomas would not cause problems as a resident. The most detailed explanation of the Salvation Army's concerns was in the September 12, 2012 email sent by the Area Commander for the Salvation Army summarizing his investigation of Thomas's situation: "Your actions during your time at the shelter exhibited disrespect and hostility toward the staff that was

14

endeavoring to help you, therefore you were asked to leave the facility." J.A. 21. The email also offered shelter if Thomas would "receive a mental health evaluation and stabilization services." J.A. 21. It is not reasonable to read this email as evidence that the Salvation Army refused to admit Thomas because of a mental disability. Rather, it is clear that the Salvation Army's decision to deny Thomas access was an effort to exercise prudence and to ensure that, with the support of appropriate medical evidence, any mental condition of hers was under control. This is consistent with the only other instance in Thomas's complaint of a Salvation Army staff member referencing her mental illness. In denying her access to the shelter, the staff member suggested Thomas would be readmitted if she obtained a mental health evaluation. J.A. 19.

The Salvation Army was within its rights to require reasonable steps to ensure that Thomas was stable before admitting her to the shelter. The Salvation Army is charged with protecting all of those in its shelters, and it simply cannot run the serious risk of admitting a resident who will be disruptive and may inflict harm on others. Admitting such a resident jeopardizes the safety of other residents and may subject the shelter to significant liability. See e.g. Corporan v. Barrier Free Living Inc., 19 N.Y.S.3d 160 (N.Y. App. Div. 2015) (affirming denial of homeless shelter's motion for summary

15

judgment where factual issues existed as to whether fatal attack by resident was foreseeable); Keri Blakinger & Reuven Blau, NYC Shelter to Pay $1.2M to Stabbed Resident's Kin, N.Y. DAILY NEWS, March 31, 2016, at 22 (describing $1.2 million settlement in Corporan).

If denying access to an unstable applicant subjected a shelter to extended litigation and potential liability, the shelter would be faced with a difficult dilemma. Charitable organizations would be subject to liability whichever way they turned. Denial of access would lead to lawsuits like this one, and ill-advised grants of access could lead to staggering judgments against the charitable organization if another resident was seriously harmed. The time and expense involved in all of this would risk impairing the humane mission of sheltering homeless persons that is these organizations' very reason for being.

In fact, Congress anticipated this very problem and repeatedly declined to extend statutory protection to individuals who present a threat to public health or the safety of others. See 42 U.S.C. § 3604(f)(9) ("Nothing in [the FHA] requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others."); 42

16

U.S.C. § 12182(b)(3) ("Nothing in [the ADA] shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others."); McGeshick v. Principi, 357 F.3d 1146, 1151 (10th Cir. 2004) ("[I]t is a defense to claims under the Rehabilitation Act that [a plaintiff] may pose a 'direct threat' to the welfare of others."). The district court was right not to put the shelter between a rock and a hard place by imposing liability for exercising prudence in the course of its admissions decisions.

In an effort to clear the bar of plausibility, Iqbal, 556 U.S. at 678, Thomas claims in her complaint that "[t]here were no instances . . . of conflict with staff," J.A. 21, but this assertion seems limited to her brief stay at the Salvation Army before she was transferred to the Church in the City. Her own descriptions of her later interactions with Salvation Army staff do not serve to undermine the Salvation Army's explanation. In fact, those descriptions indicate the possibility of hostility, including Thomas's accusations of unethical staff conduct and her threats of legal action. See J.A. 17, 20. Moreover, Thomas's alleged mental health problems are not inconsistent with hostile interactions with staff members. In short, these problems may have contributed to any unfortunate friction.

17

Thomas argues that she received different explanations from different Salvation Army staff members for refusing to admit her. These explanations, however, show once again the Salvation Army exercising caution when confronted with a potentially disruptive resident, and any minor inconsistencies are evidence of multiple shelter employees dealing with a difficult situation. Cf. Price v. Thompson, 380 F.3d 209, 217 n.5 (4th Cir. 2004) (finding inconsistencies that "ar[o]se from reading applications hastily or from being nervous during depositions" were not evidence of pretext).

Thomas also complains that the Salvation Army did not accept her discharge papers from the emergency room as a mental health evaluation. These papers were the result of a brief consultation and fell short of being the considered opinion of a mental health professional. The Salvation Army was under no obligation to accept such an abbreviated assessment as an adequate response to its offer of shelter if Thomas submitted to a fuller mental health evaluation from a behavioral health organization.

In sum, Thomas's complaint does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Because we cannot make a reasonable inference from her complaint – even when liberally construed – that Thomas

18

is handicapped under the FHA or that the defendants impermissibly denied Thomas shelter because of her mental illness, Thomas's FHA claim must be dismissed.

E.

Finally, Thomas's claim under the Rehabilitation Act was also properly dismissed. As with the ADA and the FHA, the Rehabilitation Act forbids discrimination based on a disability. The Rehabilitation Act, though, differs in two key ways. First, it applies only to programs receiving federal assistance. 29 U.S.C. § 794; see also Disabled in Action v. Mayor & City Council of Baltimore, 685 F.2d 881, 883 (4th Cir. 1982). Second, the Rehabilitation Act requires that a plaintiff show that the exclusion was "solely by reason of her or his disability." 29 U.S.C. § 794. This is a stricter causation requirement than the ADA or FHA, under which the disability can be one of multiple causes. Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461-62 (4th Cir. 2012) ("To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion."); Asbury v. Brougham, 866 F.2d 1276, 1279 (10th Cir. 1989) (holding the discriminatory reason "need not be the only factor in the decision" for a violation of the FHA).

19

Thomas's complaint alleges that the Salvation Army received federal funding; there is no similar allegation for Church in the City or Victory Christian Center. Assuming that the Salvation Army would be subject to the Rehabilitation Act, Thomas's claim should nonetheless be dismissed for the same reasons as her FHA claim. Thomas's complaint fails to allege (1) a mental illness that would qualify as a disability under the Act or (2) a nexus between the Salvation Army's decision not to admit her and her alleged mental disability. The heightened causation required for the Rehabilitation Act claim makes the inadequacy of Thomas's complaint even more apparent.

F.

Because we affirm the district court's dismissal of all of Thomas's federal claims, we also affirm its decision to decline to exercise supplemental jurisdiction and thus to dismiss Thomas's state law claims without prejudice. See Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

III.

The district court was right to dismiss the complaint given its multiple deficiencies, namely the omission of the nature of any illness much less the presence of such illness as a causative agent of the Salvation Army's decision. The Salvation Army was justified in exercising prudence, protecting other residents and its staff, and requesting a more thorough

20

evaluation of Thomas's mental health. Thomas has not thrown this reasonable explanation into plausible doubt. <u>Twombly</u>, 550 U.S. at 570. We therefore affirm the district court. We note that Thomas did not have an opportunity to respond before the district court dismissed her complaint sua sponte or an opportunity to amend her complaint. Thus, we modify the judgment only to the extent that the dismissal be without prejudice.[3]

<u>AFFIRMED AS MODIFIED</u>

---

[3] As the district court noted, Thomas has filed at least eight lawsuits in the Western District of North Carolina, prevailing in none, and at least five additional suits in the Middle District of North Carolina. J.A. 59. Our opinion herein does not reflect on whether Thomas should be subject to a pre-filing injunction, a matter we leave to the district court in the first instance.