is appropriately transferred to the United States District Court for the District of Delaware.

**Richard POLIDI, Plaintiff,**

v.

**Carmen Hoyme BANNON,
et al., Defendants.**

**Case No. 1:16–cv–1535**

United States District Court,
E.D. Virginia,
**Alexandria Division.**

Signed December 28, 2016

Richard Polidi, Raleigh, NC, pro se.

## ORDER

T.S. Ellis, III, United States District Judge

The matter is before the Court on the *pro se* plaintiff's application to proceed in *forma pauperis* pursuant to 28 U.S.C. § 1915. Because plaintiff has made the requisite showing, his application to proceed in *forma pauperis* must be granted.

Importantly, however, § 1915(e) requires that a complaint filed in *forma pau-*

*peris* be dismissed if at any time it is determined that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In determining whether to dismiss a case pursuant to § 1915(e), a district court has "wide latitude" and "meaningful discretion." *Nagy v. FMC Butner*, 376 F.3d 252, 256 (4th Cir. 2004).

With respect to failure to state a claim, the familiar plausibility pleading standard applies. *See De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). Under that standard, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).[1] In addition, an action is frivolous when it "lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S.

---

1. Although courts must generally "construe allegations in a pro se complaint liberally, a complaint must still contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quotation marks omitted). Of course, the logic underpinning the liberal construction rule is that a typical *pro se* plaintiff does not have legal training and is unfamiliar with the legal system. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). But where, as here, the *pro se* plaintiff is a practicing or former attorney, courts have declined to give liberal construction to the complaint. *See, e.g., Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 633 (6th Cir. 2008) (district court did not abuse its discretion by denying special consideration to *pro se* practicing attorneys); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001) ("[P]ro se attorneys ... typically 'cannot claim the special consideration which the courts customarily grant to *pro se* parties.'" (quoting *Harbulak v. Cnty. of Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981)); *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) ("While we are generally obliged to construe pro se pleadings liberally ... we decline to do so here because [plaintiff] is a licensed attorney" (citation omitted)); *Godlove v. Bamberger, Foreman, Oswald & Hahn*, 903 F.2d 1145, 1148 (7th Cir. 1990) ("Ordinarily, we treat the efforts of *pro se* applicants gently, but a *pro se* lawyer is entitled to no special consideration."); *Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) ("We cannot accord [plaintiff] the advantage of the liberal construction of his complaint normally given *pro se* litigants ... because [plaintiff] is a licensed attorney."); *Lampkin–Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed.Appx. 274 (11th Cir. 2008) (not reversible error to hold former attorney to higher standard than that required of a typical *pro se* litigant); *Presnick v. Bysiewicz*, 297 F.Supp.2d 431, 433 (D. Conn. 2003) ("While *pro se* complaints are held to less exacting standards than pleadings drafted by lawyers, plaintiff, a former attorney, is not entitled to the considerations accorded a typical pro se plaintiff."); *Bertucci v. Brown*, 663 F.Supp. 447, 449 (E.D.N.Y. 1987) ("[P]laintiff was a former attorney and is therefore not

319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Notably, in evaluating whether a complaint must be dismissed as frivolous pursuant to § 1915(e), "district courts are at liberty to consider any factors that experience teaches bear on the question of [frivolousness]" *Nagy*, 376 F.3d at 257.

## I.

This case is the fifth lawsuit that plaintiff, a disbarred attorney, has filed in this district in connection with his disbarment by the North Carolina State Bar ("NCSB") or the United States Patent and Trademark Office ("USPTO"). With respect to his disbarment in North Carolina, plaintiff signed a consent order of disbarment and a sworn, notarized "Affidavit of Surrender," affirming, *inter alia*:

(i)   that plaintiff freely and voluntarily resigned his bar license;

(ii)  that he was under investigation by the NCSB for misuse of funds that plaintiff received in connection with the representation of a client;

(iii) that the material facts upon which the NCSB's investigation was predicated were true; and

(iv)  that plaintiff was submitting his resignation because "if disciplinary

charges were predicated upon the misconduct under investigation [by the NCSB], [plaintiff] could not successfully defend against them."

*North Carolina State Bar v. Polidi*, 14CV009738 (N.C. Super. Ct. July 21, 2014) (Affidavit of Surrender).[2]

Despite this sworn affidavit, plaintiff has filed the following lawsuits—two of which have already been dismissed pursuant to § 1915(e):

(i)  In August 2015, plaintiff filed a claim seeking judicial review of the USPTO's decision to disbar him. The USPTO's decision was affirmed, and plaintiff's petition was therefore dismissed. Plaintiff subsequently appealed, which appeal was docketed on May 5, 2016 and is still pending.[3]

(ii) In September 2015, a month after filing his first suit, plaintiff brought 42 U.S.C. § 1983 and malicious prosecution claims against a federal officer and one of the defendants in the instant case. Plaintiff voluntarily dismissed all claims in this § 1983 and malicious prosecution suit against all defendants.[4]

---

entitled to the considerations accorded a typical *pro se* plaintiff."); *Gordon v. Gutierrez*, No. 1:06cv861, 2006 WL 3760134, at *1 n.1 (E.D. Va. Dec. 14, 2006) ("Plaintiff represents that she is an attorney, a law school graduate, and a member a neighboring state's bar. As such, she is not entitled to the liberal construction of pleadings ordinarily afforded *pro se* litigants.").

Thus, although plaintiff's legal training has not been on display in his recent lawsuits, plaintiff is not entitled to the lenient standard afforded typical *pro se* litigants. That said, even when plaintiff's allegations are construed liberally, plaintiff's claims still fail to pass muster pursuant to § 1915(e).

**2.** In determining whether to dismiss an action pursuant to § 1915 (e) as frivolous or for failure to state a claim, court records are

properly considered. *Daye v. Bounds*, 509 F.2d 66 (4th Cir. 1975) ("[A] district court may properly consider court records for the purpose of determining whether an action brought in forma pauperis must be dismissed as frivolous."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (at the Rule 12(b)(6) stage, courts may consider "matters of which a court may take judicial notice").

**3.** *Polidi v. Lee*, No. 1:15–cv–1030 (E.D. Va. Nov. 24, 2015) (Order affirming disbarment decision and dismissing petition), *appeal docketed*, No. 16–1997 (Fed Cir. May 5, 2016).

**4.** *Polidi v. Lee*, No. 1:15–cv–1141 (E.D. Va. Jan. 6, 2016) (Voluntary Dismissal of plaintiff's § 1983 and malicious prosecution Claims against one defendant); *id.* (E.D. Va.

(iii) Approximately a year later, in October 2016, plaintiff filed defamation and § 1983 claims against the NCSB and unknown "John Doe" NCSB employees. That complaint was dismissed, pursuant to § 1915(e), as frivolous, for failure to state a claim, and for seeking money damages against a defendant who is immune from such relief.[5] Plaintiff subsequently filed a "Motion For New Hearing," invoking Rules 52, 59, and 60, Fed. R. Civ. P., which motion was denied.[6]

(iv) Then, on December 9, 2016, plaintiff filed a lawsuit against the lawyers and firm that represented plaintiff in connection with the NCSB disbarment proceedings, alleging § 1983 and § 1985 claims, as well as three state-law claims. On December 22, 2016, the federal claims in that case were dismissed pursuant to § 1915(e) as frivolous and for failure to state a claim, and the remaining state-law claims were dismissed pursuant to 28 U.S.C. § 1367(c).[7]

(v) The instant action was also filed on December 9, 2016. Plaintiff's original Complaint in this action named as defendants (i) the NCSB, (ii) three named employees of the NCSB in their official and individual capacities, (iii) an individual named Douglas Bell, and (iv) fifteen "Jane" or "John Does." The original Complaint alleged four causes of action: (i) a § 1983 claim; (ii) a § 1985 claim, (iii) abuse of process, and (iv) breach of fiduciary duty.[8]

On December 27, 2016—five days after plaintiff's suit against his former lawyers was dismissed—plaintiff filed an Amended Complaint ("AC") in the instant action.[9] Plaintiff now alleges claims against only (i) Carmen Bannon, individually and in her official capacity as a prosecutor employed by the NCSB, and (ii) Douglas Bell, a private citizen who submitted a complaint against plaintiff to the NCSB.[10] The AC alleges the following causes of action: (i) a § 1983 claim; (ii) a § 1985 claim; (iii) breach of fiduciary duty; (iv) abuse of process; (v) conversion; (vi) interference with contract; (vii) malicious prosecution; and (viii) intentional infliction of emotional distress. Plaintiff seeks money damages and declaratory relief. These Claims are addressed as follows.

---

Jan. 8, 2016) (Voluntary Dismissal of same Claims against remaining defendant).

**5.** *Polidi v. North Carolina State Bar*, No. 1:16–cv–1322 (E.D. Va. Oct. 31, 2016) (Dismissal pursuant to § 1915(e)).

**6.** *Polidi v. North Carolina State Bar*, No. 1:16–cv–1322 (E.D. Va. Nov. 30, 2016) (Order).

**7.** *Polidi v. Cheshire Parker Schneider & Bryan, PLLC*, No. 1:16–cv–1534 (E.D. Va. Dec. 22, 2016) (Dismissal pursuant to § 1915(e) and § 1367(c)).

**8.** *Polidi v. North Carolina State Bar*, No. 1:16–cv–1535 (E.D. Va. Dec. 9, 2016) (Complaint).

**9.** Plaintiff filed the AC "as a matter of course," specifically invoking Rule 15(a)(1), Fed. R. Civ. P. AC at 1. Yet, it is unclear whether a plaintiff proceeding in *forma pauperis* may amend as a matter of course. *See, e.g., Long v. Monroe*, No. 3:12–cv–64–RJC, 2012 WL 3614469 (W.D.N.C. Aug. 21, 2012) (plaintiff proceeding in forma pauperis does not have absolute right to amend "because courts must dismiss IFP cases anytime if they determine the case is frivolous or fails to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)" (citing cases)). Out of an abundance of caution, however, plaintiff's amendment will be accepted.

**10.** The AC alleges that defendant Bell, who is not employed by the NCSB, improperly contacted the NCSB about plaintiff. AC ¶¶ 7–9.

## A. Section 1983

To state a claim under § 1983, "a plaintiff must allege that he was 'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)). Section 1983's "color of state law" requirement is "synonymous with the more familiar state-action requirement," and "the analysis for each is identical." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

To begin with, because defendant Bell is a private citizen, not a state actor, plaintiff's § 1983 count against Bell fails to state a claim. *See* AC ¶ 7; *Thomas*, 841 F.3d at 637 ("Without state action, [plaintiff] has no § 1983 claim"). Indeed, on December 22, 2016, plaintiff's complaint against his former lawyers—which complaint also alleged a § 1983 claim against private actors—was dismissed for this same reason. *See Polidi v. Cheshire Parker Schneider & Bryan, PLLC*, No. 1:16–cv–1534 (E.D. Va. Dec. 22, 2016). Five days later, seeking to avoid the same result in the instant action, plaintiff amended his complaint to allege that defendant Bell "influenced the conduct of a State actor so as to convert his own conduct to State action." AC ¶ 47. No facts in the AC are alleged to support this conclusory allegation; this allegation is baseless.

To be sure, "[i]n rare cases, the state can 'so dominate[ ] [private] activity as to convert it to state action.'" *Thomas*, 841 F.3d at 637 (quoting *Philips*, 572 F.3d at 181)). Yet, the Fourth Circuit has instructed time and again that a state's "'[m]ere approval of or acquiescence in the initiatives of a private party' is insufficient" to constitute state action. *Wahi v.*

*Charleston Area Med. Ctr.*, 562 F.3d 599, 616 (4th Cir. 2009) (quoting *DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999)). Rather, "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (quotation marks omitted). Ultimately, there is "no specific formula" for determining the existence of state action, and "[w]hat is fairly attributable to the state is a matter of normative judgment, and the criteria lack rigid simplicity." *Philips*, 572 F.3d at 182 (alterations omitted).

Here, plaintiff's allegation of any state action with respect to defendant Bell is wholly conclusory; the AC offers no facts—nor could it do so—to support any plausible inference that Bell's contact with the NCSB transformed him into a state actor. Instead, the AC alleges that defendant Bell unilaterally contacted the NCSB "in order to harass the Plaintiff" and, curiously, "out of a misplaced hope ... of getting back together with [Bell's] ex-wife." AC ¶ 8. That is hardly action "fairly attributable to the state." *Philips*, 572 F.3d at 182. Notably, the AC does not allege that defendants ever met, spoke, or wrote the other. Indeed, the only allegation in the AC regarding any coordination between defendant Bell and the state are the conclusory statements that, "[u]pon information and belief, [Bell] act[ed] in concert with and in collusion with" defendant Bannon, and that "an agreement existed between Bannon and Bell[.]" AC ¶¶ 10, 48. These allegations are also deficient, because it is well-settled that "[a] conclusory allegation that a private person acted jointly with a state actor fails to state a claim under § 1983 [.]" *Kash v. Honey*, 38 Fed.Appx. 73, 76 (2d Cir. 2002). Moreover, amendment would be futile, as a private

citizen's filing a grievance or cooperating with a state bar association cannot fairly be attributed to the state. *See, e.g., id.* at 75–76 (no state action where private citizen formally accuses plaintiff of misconduct). Simply put, plaintiff has not alleged any facts to support a plausible inference that defendant Bell was acting under color of law, and thus the § 1983 count against defendant Bell fails to state a claim and lacks any arguable basis in law or fact.

■ Next, to the extent plaintiff seeks money damages against defendant Bannon in her official capacity as a "prosecutor employed by the [NCSB]," [11] plaintiff's § 1983 claim is barred by the doctrine of sovereign immunity. Indeed, on October 31, 2016, plaintiff's last attempt to assert a § 1983 damages claim against the NCSB itself was dismissed for this precise reason. *See Polidi v. North Carolina State Bar,* No. 1:16–cv–1322 (E.D. Va. Oct. 31, 2016).[12] Two months later, it is still the settled rule that absent waiver, consent, or congressional abrogation, the Eleventh Amendment bars suits directly against a state or its agencies, divisions, departments, and officials in federal court. *Pennhurst State Sch. & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984);

*Bockes v. Fields,* 999 F.2d 788, 790 (4th Cir. 1993).[13] There is no question that the NCSB is a state agency,[14] or that an action filed against a state official in her official capacity is tantamount to a claim against the state. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Cromer v. Brown,* 88 F.3d 1315, 1332 (4th Cir. 1996). Not surprisingly, then, the Supreme Court has squarely foreclosed plaintiff's § 1983 damages claim here. *See Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("[N]either a State nor its officials sued in their official capacity are 'persons' under § 1983."). Thus, plaintiffs § 1983 damages claim against defendant Bannon, sued in her official capacity, is frivolous, fails to state a claim, and seeks money damages against a defendant who is immune from such relief. Accordingly, this claim must be dismissed.

■ Plaintiff's § 1983 claim fares no better insofar as plaintiff seeks money damages against defendant Bannon in her *individual* capacity. This is so because defendant Bannon enjoys absolute immunity from this damages claim. Prosecutors are absolutely immune from suits for mon-

---

11. AC ¶ 6.

12. Plaintiff, apparently choosing to ignore the disposition of his earlier lawsuit, originally reprised in the instant action his groundless § 1983 damages claim against the NCSB. *Compare Polidi v. North Carolina State Bar,* No. 1:16–cv–1322 (E.D. Va. Oct. 31, 2016) (Order dismissing baseless § 1983 damages claim against the NCSB pursuant to § 1915(e)), *with Polidi v. North Carolina State Bar,* No. 1:16–cv–1535 (E.D. Va. Dec. 9, 2016) (Complaint alleging another § 1983 damages claim against the NCSB).

13. As stated in the Order dismissing plaintiff's previous effort to pursue a § 1983 damages claim against the NCSB,

[t]he Fourth Circuit has observed that "[t]he capacity of a governmental body to

be sued in federal court is governed by the law of the state in which the district court is held." *Avery v. Burke County,* 660 F.2d 111, 113–114 (4th Cir. 1981). Notably, both Virginia and North Carolina preclude money damages claims against an arm or department of a state, including a state bar association. *See, e.g., Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 58, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Harris v. Va. State Bar,* No. 7:03–CV–00566, 2003 WL 24146650, at *1 (W.D. Va. Aug. 29, 2003); *McCreery v. North Carolina,* No. 5:01–CV–968, 2002 WL 32334399 (E.D.N.C. May 4, 2002).

*Polidi v. North Carolina State Bar,* No. 1:16–cv–1322 (E.D. Va. Oct. 31, 2016).

14. N.C. Gen. Stat. § 84–15.

ey damages for conduct in or connected with judicial proceedings. *See Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Nivens v. Gilchrist,* 444 F.3d 237, 250 (4th Cir. 2006). This immunity extends to state bar officials performing a disciplinary role; indeed, even the decision whether to bring a disciplinary case against a lawyer is a core prosecutorial function protected by absolute immunity. *See Imbler,* 424 U.S. at 424–26 & n. 24, 96 S.Ct. 984.[15] And it is pellucid that plaintiff's AC targets activities that defendant Bannon performed as part of her prosecutorial duties on the NCSB's behalf.[16] Particularly instructive in this regard is *Wolfenden v. Long,*[17] a case in which a district court held that defendant Bannon, as deputy counsel for the NCSB, "performs ... prosecutorial duties ... on behalf of the State Bar [and] as such, [is] immune from suit under § 1983." *Wolfenden,* 2010 WL 2998804, at *9. In sum, plaintiff's § 1983 claim against defendant Bannon, sued in her individual capacity, is barred and must be dismissed.

Finally, to the extent plaintiff seeks declaratory relief, his § 1983 claim must be dismissed as frivolous and for failure to satisfy the threshold plausibility pleading standards elucidated in *Iqbal and Twombly.* Indeed, the AC is rife with hyperbole, but devoid of facts. In essence, plaintiff's digressive and histrionic allegations amount to conclusory statements that defendant Bannon deceived everyone involved in plaintiff's disbarment by maliciously orchestrating a sham disciplinary prosecution based on untrue and unfair misrepresentations. Yet, the AC, even when liberally construed, does not allege facts sufficient to support a plausible inference that defendant Bannon violated § 1983. Indeed, plaintiff's allegations are even less credible in light of the publicly available court records relating to plaintiff's disbarment, including plaintiff's sworn, notarized "Affidavit of Surrender." *See North Carolina State Bar v. Polidi,* 14CV009738 (N.C. Super. Ct. July 21, 2014) (Affidavit of Surrender).[18] In that sworn affidavit, plaintiff declared that he freely and voluntarily resigned his bar license and admitted that he was aware of the NCSB's investigation into allegations that plaintiff had misused funds that his client had assigned to a third party. *Id.* ¶ 3. Plaintiff further admitted that "the material facts upon which the [NCSB's]

---

**15.** *See also Green v. State Bar of Tex.,* 27 F.3d 1083, 1088 (5th Cir. 1994) ("Recognizing the importance of the disciplinary process to the judiciary, courts have afforded broad immunity to members of bar grievance committees and their staff." (citing cases)); *Clulow v. Oklahoma,* 700 F.2d 1291, 1298 (10th Cir. 1983) ("We ... agree with the courts which have held that bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline enjoy absolute immunity from damage claims for such functions." (citing cases)), *overruled on other grounds by Newcomb v. Ingle,* 827 F.2d 675 (10th Cir. 1987); *Simons v. Bellinger,* 643 F.2d 774, 778–80 (D.C. Cir. 1980) (similar); *Myers v. North Carolina,* No. 5:12–cv–714–D, 2013 WL 4456848 (E.D.N.C. Aug. 16, 2013) (dismissing on absolute immunity grounds § 1983 claims against NCSB agents involved in disciplinary actions); *cf. Ostrzen-*

*ski v. Seigel,* 177 F.3d 245, 248–49 (4th Cir. 1999) (recognizing absolute immunity for members of state medical disciplinary boards).

**16.** *See AC ¶¶ 10–14, 20–26, 28–31, 34, 36–42.*

**17.** No. 5:09–cv–00536–BR, 2010 WL 2998804 (E.D.N.C. July 26, 2010).

**18.** *See supra note 2; Daye v. Bounds,* 509 F.2d 66 (4th Cir. 1975) ("[A] district court may properly consider court records for the purpose of determining whether an action brought in forma pauperis must be dismissed as frivolous."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (at Rule 12(b)(6) stage courts may consider "matters of which a court may take judicial notice").

investigation ... is predicated are true." *Id.* . ¶ 4 (emphasis added). Plaintiff even acknowledged that "if disciplinary charges were predicated upon the misconduct under investigation, [plaintiff] could not successfully defend against them." *Id.* ¶ 5. In other words, plaintiff's sworn affidavit belies—indeed, flatly contradicts—his AC.

Accordingly, plaintiff's § 1983 claim must be dismissed pursuant to 28 U.S.C. § 1915(e), as this claim is frivolous, fails to state a claim, and seeks money damages against a defendant who is immune from such relief.

### B. Section 1985

Plaintiff's § 1985 claim is even less tenable than is his § 1983 claim. To begin with, plaintiff's § 1985 money damages claim against defendant Bannon, sued either in her official or individual capacity, is barred by the same immunity doctrines that bar plaintiff's § 1983 claim. *See Will*, 491 U.S. at 71, 109 S.Ct. 2304; *Imbler*, 424 U.S. at 431, 96 S.Ct. 984; *see also supra* Part I.A.

Next, plaintiff's § 1985 claim—that defendants conspired to "deprive the Plaintiff of any fair opportunity ... to respond to allegations by Bell in connection with the [NCSB] proceeding"[19]—is also frivolous and fails to state a plausible claim on which relief can be granted.

Section 1985 is a conspiracy statute comprising three subsections, but it is clear that none provides plaintiff a cause of action. To begin with, the Fourth Circuit has recently explained that

[t]o bring a claim under 42 U.S.C. § 1985, a plaintiff must show (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Thomas*, 841 F.3d at 637 (quoting *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)). Here, plaintiff has not even attempted to allege that defendants' conduct was motivated by a "specific, *class-based*, invidiously discriminatory animus." *Id.* (emphasis added). Nor is there any basis in fact or law to believe that plaintiff could indeed demonstrate such class-based animus. Thus, plaintiff's § 1985 claim must be dismissed pursuant to 28 U.S.C. § 1915(e) as frivolous and for failure to state a claim.[20]

Insofar as plaintiff relies on § 1985(2),[21] and even assuming, *arguendo*, that a plain-

---

19. AC ¶ 48.

20. Independent of the animus requirement, plaintiff's claim clearly fails insofar as plaintiff relies on § 1985(1). This is so because § 1985(1) prohibits conspiracies designed (i) to prevent an officer from performing his duties through the use of "force, intimidation, or threat[s]"; (ii) to "induce [an officer] by like means" to leave his post; (iii) to injure an officer or his property for performing his duties, or (iv) to injure an officer's property to "molest, interrupt, hinder, or impede him in the discharge of his official duties." 42 U.S.C. § 1985(1). Plaintiff's AC does not allege any facts whatsoever regarding the use of force, intimidation, threats, or injury to property with respect to an officer, and thus any § 1985(1) claim here is baseless.

21. Section 1985(2) provides:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, ob-

tiff specifically invoking that subsection need not always allege class-based, invidiously discriminatory animus,[22] it is well-settled that a claim like plaintiff's—one that alleges a conspiracy regarding a state court proceeding—must assert class-based animus. *See, e.g., Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Simmons,* 47 F.3d at 1376; *Bloch v. Mountain Mission Sch.,* 846 F.2d 69 (4th Cir. 1988) (Table Decision). Plaintiff's inability to do so is fatal to his claim, to the extent he relies on § 1985(2).[23]

Moreover, plaintiff's § 1985 claim independently fails because the AC's conclusory assertion of a conspiracy does not pass muster under the plausibility standard set forth in *Twombly and Iqbal.* Specifically, a plaintiff asserting a § 1985 conspiracy must allege "an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons,* 47 F.3d at 1377. But as the Fourth Circuit recently stated, "[a]llegations of parallel conduct and a bare assertion of a conspiracy are not enough for a [§ 1985] claim to proceed." *Thomas,* 841 F.3d at 637 (quotation marks omitted). In this respect, plaintiff has not alleged any facts to permit a plausible inference that defendants had an agreement or "meeting of the minds" to violate plaintiff's rights. Rather, plaintiff offers only conclusory allegations (i) that

"[u]pon information and belief, [defendant Bannon] act[ed] in concert with and in collusion with Defendant Bell," AC ¶ 10; and (ii) that "[u]pon information and belief, an agreement existed between Bannon and Bell to deprive the Plaintiff of any fair opportunity ... to respond to allegations by Bell in connection with the [NCSB] proceeding." *Id.* ¶ 48. Such bare assertions fall far short of stating a § 1985 claim, even when the Complaint is construed liberally.[24]

\* \* \* \* \*

In sum, plaintiff's §§ 1983 and 1985 claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), because those claims (i) are frivolous, (ii) fail to state a claim upon which relief can be granted, and (iii) seek money damages against a defendant who is immune from such relief.

### II.

Because plaintiff's claims arising under federal law must be dismissed, analysis must turn to whether subject matter jurisdiction exists over the remaining state-law claims. *See, e.g., Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999) ("[A] federal court is obliged to dismiss a case whenever it appears the court lacks subject matter jurisdiction." (citing Fed. R. Civ. P. 13(h)(3))).[25] It is axiomatic that federal courts are "courts of limited sub-

structing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.
42 U.S.C. § 1985(2).

**22.** *Cf. Kush v. Rutledge,* 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983) (Section 1985(2) claim based on purported intimidation of witnesses in federal lawsuit need not allege class-based, invidiously discriminatory animus).

**23.** Of course, this same failure is also fatal with respect to any § 1985(3) claim. *See Poe,*

47 F.3d at 1376 (section 1985(3) claim requires allegation of "specific class-based, invidiously discriminatory animus").

**24.** *See Thomas,* 841 F.3d at 638 (upholding dismissal of a *pro se* plaintiff's § 1985 claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because the complaint offered "only conclusory allegations that the [defendants] conspired ... and that is not enough to proceed on a claim under § 1985").

**25.** Rule 12(h)(3), Fed. R. Civ. P., provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

ject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999). Thus, "the facts providing the court jurisdiction must be affirmatively alleged in the complaint." *Id.* In other words, plaintiff is required to allege facts supporting at least one of two potential bases for subject matter jurisdiction: federal question jurisdiction or diversity jurisdiction. *See* 28 U.S.C. § 1331 (federal question); *id.* § 1332 (diversity).

It is apparent that diversity jurisdiction does not exist on this record; the AC includes no facts relating to diversity of citizenship, nor does plaintiff even hint at an amount in controversy.[26] Instead, plaintiff alleges that the basis for original subject matter jurisdiction over this action is federal question jurisdiction by virtue of plaintiff's § 1983 and § 1985 claims. *See* AC ¶ 5; 28 U.S.C. § 1331. In this respect, it appears that plaintiff impliedly invoked supplemental jurisdiction over plaintiff's state-law causes of action, as the state-law claims seem to stem from the same transactions or occurrences giving rise to plaintiff's purported federal claims. *See* 28 U.S.C. § 1367 (courts may exercise supplemental jurisdiction over claims forming "part of the same case or controversy" as the cause of action that provided original jurisdiction). Yet, pursuant to § 1367, a district court may "decline to exercise supplemental jurisdiction" if the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Because original subject matter jurisdiction derived only from the federal claims that must be dismissed, and because only state-law claims remain, it is appropriate to decline to exercise supplemental jurisdiction over plaintiff's remaining state law-law claims and to dismiss those claims pursuant to § 1367(c)(3).

### III.

Accordingly, and for good cause,

It is hereby **ORDERED** that plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 is **GRANTED.**

It is further **ORDERED** that plaintiff's § 1983 and § 1985 claims are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), (ii) & (iii). Because plaintiff's § 1983 and § 1985 allegations fail to state a claim on which relief can be granted, and because these defects are incurable, plaintiff's federal claims are dismissed **WITH PREJUDICE.**[27]

---

**26.** Indeed, it is blackletter law that a federal district court has diversity jurisdiction only where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]" 28 U.S.C. § 1332(a). In addition, to establish diversity jurisdiction, plaintiff must satisfy the centuries-old "complete diversity rule," which requires that all plaintiffs be diverse from all defendants. *See, e.g., Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806).

**27.** A dismissal of a claim solely as "frivolous" under § 1915(e)(2)(B)(i) should be without prejudice. *See Nagy*, 376 F.3d at 258 ("We do not think ... that Congress intended a dismissal under § 1915(e)(2)(B)(i) ... to operate as a dismissal with prejudice."). By contrast, a dismissal for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) may be with prejudice, similar to dismissals pursuant to Rule 12(b)(6), Fed. R. Civ. P. *See, e.g., McLean v. United States*, 566 F.3d 391, 400 (4th Cir. 2009) ("[A] dismissal for frivolousness is of a qualitatively different character than a dismissal for failure to state a claim."); *id.* at 398–99 (in § 1915 context, "[a]n unqualified dismissal for failure to state a claim is presumed to operate with prejudice; the addition of the words 'with prejudice' to modify such a dismissal is simply not necessary"). Here, dismissal with prejudice is appropriate because the defects in plaintiff's § 1983 and § 1985 claims are incurable. *See id.* at 400.

To the extent plaintiff's § 1983 and § 1985 claims must be dismissed as barred by the Eleventh Amendment, these claims may still

It is further **ORDERED** that plaintiff's remaining state-law claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c)(3).

Plaintiff is reminded that any new complaint filed in this district will be subject to the Federal Rules of Civil Procedure, including Rule 11, and may result in the issuing of an Order enjoining plaintiff from filing additional pleadings relating to his disbarment. Of course, this Order does not prejudice plaintiff from pursuing his state-law claims in state court.

Should plaintiff wish to appeal, he must do so by filing a written notice of appeal with the Clerk's Office within thirty (30) days of the entry date of this Order, pursuant to Rules 3 and 4, Fed. R. App. P. A written notice of appeal is a short statement that indicates a desire to appeal and notes the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court.

The Clerk is directed to send a copy of this Order to the *pro se* plaintiff, all counsel of record, and the North Carolina State Bar, and to place this matter among the ended causes.

be dismissed with prejudice, because "Eleventh Amendment immunity is not truly a limit on the subject matter jurisdiction of federal courts, but a block on the exercise of that jurisdiction." *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995).